## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (Greenbelt Division)

|  |  |  |
|---|---|---|
| NNEKA ONWUDIWE, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. ַ |
| | ) | |
| v. | ) | |
| | ) | |
| U.S. FOOD AND DRUG | ) | |
| ADMINISTRATION; JANET | ) | |
| WOODCOCK, Acting Commissioner of the | ) | Case 1: EEOC No: 530-2017-00163X |
| United States Food and Drug | ) | |
| Administration, in her official capacity; | ) | Case 2: Agency No. HHS-FDACDER-048-19 |
| U.S. DEPARTMENT OF HEALTH AND | ) | |
| HUMAN SERVICES; and XAVIER | ) | Case 3. Agency No. HHS-FDACDER-104-20 |
| BECERRA, Secretary of the United States | ) | |
| Department of Health and Human Services, | ) | |
| in his official capacity, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## COMPLAINT

**COMES NOW** Plaintiff, Nneka Onwudiwe (hereinafter "Plaintiff" or "Dr. Onwudiwe"),

by and through her undersigned counsel, and sues the U.S. Food and Drug Administration

(hereinafter "FDA" or "Co-Defendant") and the Department of Health and Human Services

(hereinafter "HHS" or "Co-Defendant"), and for cause of action states, as follows:

## NATURE OF THE CASE

1.      Plaintiff Nneka Onwudiwe (hereinafter "Plaintiff" or "Dr. Onwudiwe") brings this

civil action pursuant to Title VII of the Civil Rights Act of 1964 (hereinafter "Title VII"), as

amended, 42 U.S.C. § 2000e, et seq.; the Age Discrimination in Employment Act of 1967, as

codified, 29 U.S.C. §§ 621 to 634; the Americans with Disabilities Act of 1990, as codified, 42

U.S.C. §§ 12112 to 121117; and Sections 501 and 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 703 et seq., for relief from Defendants' harassment and discriminatory conduct towards Plaintiff on the bases of her race, sex, national origin, age, and disability, as well as Defendants' retaliation for Plaintiff's protected activity.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this Complaint pursuant to 28 U.S.C. § 1331, as it asserts a claim that arises under laws of the United States, specifically Title VII of the Civil Rights Act of 1964 (hereinafter "Title VII"), as amended, 42 U.S.C. § 2000e, et seq.; the Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634; the Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 121117; and Sections 501 and 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 703 et seq.

3.      Venue is appropriate and based on the fact that a substantial part of the actions complained of are the result of actions and the employment practices of Defendant, a Federal government entity operating within the District of Maryland. Id.

## EXHAUSTION OF REMEDIES

### Case 1: EEOC No: 530-2017-00163X

4.      On September 6, 2015, Plaintiff timely contacted an FDA Equal Employment Opportunity ("EEO") counselor and raised an informal complaint against FDA and HHS alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e, et seq.

5.      On December 22, 2015, Plaintiff timely filed a Formal Complaint of Discrimination with the FDA EEO Office alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e, et seq.

6.      On September 8, 2016, Plaintiff received a Report of Investigation ("ROI") from the FDA informing her, among other things, of her right to request a hearing with an EEOC Administrative Judge.

7.      On September 29, 2016, Plaintiff submitted a request for a hearing with an EEOC Administrative Judge.

8.      On April 4, 2019, EEOC Administrative Judge John Alvin Henderson issued an order entering summary judgment in favor of the Agency. The Order instructed the Agency to take final action on the complaint by issuing a final order notifying whether or not the Agency would fully implement the decision within forty (40) calendar days of receipt of the order entering judgment.

9.      To date, Plaintiff has not received a Final Agency Decision with respect to her claims in her Formal Complaint of Discrimination.

10.      Plaintiff has exhausted all of her administrative remedies.

11.      Plaintiff hereby timely files the instant Complaint more than one hundred and eighty (180) days after the filing of her Formal Complaint of Discrimination.

**Case 2: Agency No. HHS-FDACDER-048-19**

12.      On February 19, 2019, Plaintiff timely contacted an FDA EEO counselor and raised an informal complaint against FDA and HHS alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e, et seq.; the Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634; the Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 121117; and Sections 501 and 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 703 et seq.

13.     On June 26, 2019, Plaintiff timely filed a Formal Complaint of Discrimination with the FDA EEO Office alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e, et seq.; the Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634; the Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 121117; and Sections 501 and 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 703 et seq.

14.     On August 9, 2019, January 10, 2020, March 9, 2020, May 29, 2020, and June 15, 2020, Plaintiff's Formal Complaint of Discrimination was amended to include additional claims of violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e, et seq.; the Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634; the Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 121117; and Sections 501 and 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 703 et seq.

15.     On March 19, 2021, Plaintiff received a letter from the FDA informing her that the FDA intended to file a default Final Agency Decision ("FAD") with respect to her claims in her Formal Complaint of Discrimination.

16.     To date, Plaintiff has not received a Final Agency Decision with respect to her claims in her Formal Complaint of Discrimination.

17.     Plaintiff has exhausted all of her administrative remedies.

18.     Plaintiff hereby timely files the instant Complaint more than one hundred and eighty (180) days after the filing of her Formal Complaint of Discrimination.

## Case 3: Agency No. HHS-FDACDER-104-20

19.     On July 30, 2020, Plaintiff timely contacted an FDA Equal Employment Opportunity ("EEO") counselor and raised an informal complaint against FDA and HHS alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e, et seq.; the Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634; the Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 121117; and Sections 501 and 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 703 et seq.

20.     On September 23, 2020, Plaintiff timely filed a Formal Complaint of Discrimination with the FDA EEO Office alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e, et seq.; the Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634; the Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 121117; and Sections 501 and 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 703 et seq.

21.     On May 19, 2021, Plaintiff received a letter from the FDA informing her that the FDA intended to file a default Final Agency Decision ("FAD") with respect to her claims in her Formal Complaint of Discrimination.

22.     To date, Plaintiff has not received a Final Agency Decision with respect to her claims in her Formal Complaint of Discrimination.

23.     Plaintiff has exhausted all of her administrative remedies.

24.     Plaintiff hereby timely files the instant Complaint more than one hundred and eighty (180) days after the filing of her Formal Complaint of Discrimination.

**PARTIES**

25.     Plaintiff is currently domiciled at 11605 Caplinger Rd, Silver Spring, MD 20904.

Plaintiff is a resident of the State of Maryland and a United States citizen.

26.     Defendants FDA and HHS are Federal agencies of the United States of America

and are subject to  suit for the negligent, discriminatory, wanton, willful or wrongful acts

and/or omissions of its  employees or agents and are therefore liable, pursuant to the doctrine of

*Respondeat Superior*.

**FACTUAL BACKGROUND**

27.     Plaintiff incorporates all information and allegations contained in the preceding

paragraphs, as if fully set forth herein.

28.     From around August 2012 until August 7, 2020, Plaintiff worked for Defendants

as a PRO/PE Consumer Safety Officer.

29.     From around May 2015 until August 7, 2020, Plaintiff's first line supervisor was

Ms. Twyla Thompson ("Ms. Thompson") and her second line supervisor was Mr. Robert Dean

("Mr. Dean").

**Case 1: EEOC No: 530-2017-00163X**

30.     Plaintiff incorporates all information and allegations contained in the preceding

paragraphs as if fully set forth, herein.

31.     In the fall of 2012, and also in January 2013, Mr. Askine asked Plaintiff to transfer

to another position, stating a lack of Full Time Equivalent (FTE) Employment for her position.

When she refused to vacate the position to allow it to be given to an Asian woman, Plaintiff was

subjected to ongoing and continuous harassment and a hostile work environment. Ms. Elaine

Cunningham uttered during one of the encounters where Mr. Askine tried to urge the Plaintiff to leave the position: "Quynh is interested in this position".

32.     Beginning September 14, 2012 and ongoing, Plaintiff did not receive proper credit for the work she had done under the supervision of Ms. Cunningham, Mr. Askine, Mr. Dean, Mr. Sauers, Ms. Rulli, and Ms. Thompson in retaliation for refusing to vacate the position.

33.     Beginning September 21, 2012 and ongoing, management placed unmanageable work load demands and deadlines on Plaintiff in a purposeful attempt to set her up to fail. However, her similarly situated non-African American co-workers were allowed a reasonable opportunity and time to accomplish their assigned workload and task, For example, coworker EC (Asian woman) was allowed a reasonable opportunity and time to accomplish her assigned workload and task.

34.     From on or about October 16, 2012 through October 2014, Mr. Askine withheld information from Plaintiff which was needed to change her title and position description in order to properly classify her in the appropriate position description that she was recruited and hired for. However, her similarly situated non-African American co-workers were not subjected to a long and arduous effort to process the paperwork necessary to be properly classified in their position in order to receive appropriate credit for tenure in the position and career progression and potential. For example, coworker EC (Asian woman) was not subjected to a process that hindered her career progression.

35.     Beginning on or about January 29, 2013 and ongoing, management regularly excluded Plaintiff from workplace activities and meetings. However, her similarly situated non-African American co-workers were allowed the opportunity to participate in relevant activities and meetings that provided information and opportunities that could help them stay on track and

be successful in their position. For example, coworker EC (Asian woman) was allowed the opportunity to participate in relevant activities and meetings that provided her with information and opportunities to make her successful in the position.

36.     Beginning February 11, 2013 and ongoing, management continuously held Plaintiff accountable for expectations not communicated to her before the appraisal period, while not giving Plaintiff credit for the relevant tasks she completed, or her level of responsibilities. In addition, Plaintiff did not receive any awards or other recognition for noteworthy performance. However, her similarly situated non-African American co-workers were not subjected to such performance management parameters for planning, monitoring, rating performance and awarding performance. For example, coworker EC (Asian woman) participated in a performance management process that was fair.

37.     Beginning in the spring of 2013 and ongoing, management has not permitted Plaintiff to apply for student loan repayment. However, her similarly situated non-African American co-workers were informed and allowed the opportunity to participate in the Federal student loan repayment program which is designed as a recruitment or retention incentive for candidates or current employees of the agency.

38.     Beginning February 24, 2014 and ongoing, management frequently removed Plaintiff's work duties and responsibilities, thus undermining her ability to perform, sabotaging her contribution to the office, and negatively effecting her performance evaluation. However, her similarly situated non-African American co-workers were afforded the opportunity to perform task and activities relevant to their position description to be properly rated for the performance year, as well as provide opportunities for participation in projects and task above and beyond expected job performance so as to be considered for awards for recognize a contribution. For example, coworker CN (White woman) and LP (White woman) were afforded the opportunity to perform task

and activities relevant to their position description so as to be properly rated for the performance year.

39.     Beginning May 2014 and ongoing, Ms. Thompson and former supervisors Mr. Michael Sauers, Mr. Robert Dean, and Ms. Karen Rulli repeatedly and intentionally withheld information from Plaintiff which she needed to perform her job effectively, despite her many requests for clarifying information. However, her similarly situated non-African American co-workers, for example CN (White woman), LP (White woman), AK (Asian male) were not subjected to a lack transparency and conflicting data with respect to goals and alignment of such goals with others who are doing similar work.

40.     Beginning May 2014 and ongoing, Mr. Dean and Ms. Rulli continuously and unfairly criticized Plaintiff's work, constantly questioned her, and used intimidation to prevent her from using leave. However, her similarly situated non-African American co-workers for example CN (White woman), LP (White woman), AK (Asian male) were not subjected to intense scrutiny, interrogation, and intimidation before a determination could be made as to the needs of the work unit and the granting of leave.

41.     Beginning May 2014 and ongoing, Mr. Sauers, Mr. Dean, and Ms. Rulli denied approval of Plaintiff's requests for credit hours. However, her similarly situated non-African American co-workers for example CN (White woman), LP (White woman), AK (Asian male) were not denied or withheld the necessary resources needed to perform their duties and responsibilities.

42.     Beginning May 2014 and ongoing, Mr. Sauers, Mr. Dean, and Ms. Rulli delayed and denied approval of Plaintiff's requests for professional development activities, inside and outside of the organization. However, her similarly situated non-African American co-workers

9

for example NC (White woman), LP (White woman), AK (Asian male) were afforded professional development activities, inside and outside of the organization.

43.    Beginning May 2014 and ongoing, Ms. Elaine Cunningham, Ms. Lisa Hubbard, Mr. Sauers, Mr. Dean, Ms. Rulli, and Ms. Thompson made humiliating, belittling and disparaging comments about Plaintiff in staff meeting minutes, drop files, and during one on one meetings. For example, in Agency meeting minutes, dated October 27, 2014, for the drug product Breo Ellipta, Ms. Cunningham perpetuated racist stereotypes and caricature of African American women when she falsely portrayed the Plaintiff describing her appearance in a meeting as "visually angry", "increasingly angrier", "raising her voice", "eye rolling", "head-shaking", "smirking", "sighing", "created a tense and uncomfortable meeting environment". However, non-African Americans who attended Agency meetings were not described figuratively, for example. CN (White woman), LP (White woman), AK (Asian male) physical appearance were not subject of meeting meetings when discussing medical product information intended for Agency business purpose.

44.    Beginning August 7, 2014 and ongoing, Mr. Sauers, Mr. Dean, and Ms. Thompson intentionally denied her promotion, training, and other enhancement opportunities that were afforded to other similarly situated non-African American co-workers for example CN (White woman), LP (White woman), AK (Asian male) were not intentionally denied training or other enhancement opportunities.

45.    Beginning September 12, 2014 and ongoing, Plaintiff continuously received negative comments about her performance, with no basis, and psychological harassment through false statements about her by Mr. Sauers, Mr. Dean, Ms. Rulli and Ms. Thompson. In addition, Ms. Cunningham, Mr. Sauers, Mr. Dean, Ms. Rulli, and Ms. Thompson made hurtful and

destructive remarks and rumors about Plaintiff's personality and conduct. However, similarly situated non-African American coworkers, for example CN (White woman), LP (White woman), AK (Asian male), were not subjected to negative acts and unwanted behaviors of aggression and psychological harassment.

46.     On July 16, 2015, Plaintiff was retaliated against when she received negative feedback from Ms. Thompson after she expressed disapproval of her unfair work environment and treatment.

47.     On July 23, 2015, Ms. Thompson retaliated against the Plaintiff when she issued the Plaintiff an unofficial reprimand, and a negative Mid-Year Performance Appraisal, with a counseling memo expressing criticism of Plaintiff's work performance, and a detailed plan to place Plaintiff on a PIP.

48.     On July 23, 2015 and July 29, 2015, Ms. Thompson retaliated against the Plaintiff when she criticized the quality of Plaintiff's completed work and imposed a stricter standard for Plaintiff's work than for that of the other Consumer Safety Officers under her supervision.

49.     On July 25, 2015, Ms. Thompson retaliated against the Plaintiff when she instructed Plaintiff to provide feedback to questions solicited by management.

50.     On July 29, 2015, Ms. Thompson retaliated against the Plaintiff when she reissued Plaintiff a written warning stating her intention to place Plaintiff on a Performance Improvement Plan ("PIP").

51.     Ongoing and as recently as July 29, 2015, management retaliated against the Plaintiff when they altered and fabricated her performance elements under an incorrect Position Description ("PD") and Performance Management Appraisal Program ("PMAP").

52.     On July 31, 2015, Plaintiff was retaliated against when she learned via an email from her former supervisor Mr. Mark Askine that she was not selected for the GS-14 Consumer Safety Officer position advertised under Vacancy Announcement Number FDA-CDER-MP-15-1337515RH that she was qualified for. Similarly situated non-African Americans were selected: AG (White male), AM (Middle Eastern female), Mr. AK (Asian male), and JD Jim Dvorsky (White male).

53.     On August 6, 2015, Ms. Thompson retaliated against the Plaintiff when she made several comments threatening Plaintiff's job security in emails to her, as well as during a one on one meeting.

54.     On August 22, 2015, Plaintiff retaliated against when she was excluded from staff meetings.

55.     On September 17, 2015, and on several occasions thereafter, Ms. Thompson retaliated against the Plaintiff when she accused Plaintiff of making work errors that were not actually made.

56.     On January 28, 2016, Plaintiff retaliated against the Plaintiff when she received her Performance Management Appraisal Program (PMAP) rating of 3.16, rounded off to a 3.0, without any explanation from her supervisor, Ms. Twyla Thompson, on how she derived the Plaintiffs ratings as well as how her performance was measured against the performance elements.

## Case 2: Agency No. HHS-FDACDER-048-19

57.     Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth, herein.

### Discrete Acts of Discrimination and Retaliation

58.     On or about January 28, 2019, Ms. Twyla Thompson and Mr. Robert Dean discriminated against Plaintiff because of her age, race, and national origin and retaliated against her when they denied Dr. Onwudiwe's request for a promotion based upon accretion of duties to a GS-14 grade level. Similarly, situated younger, non-African American co-workers received more favorable opportunities with respect to the hiring and promotion practices. For example, Nisha Patel (Asian woman)

59.     On February 28, 2019, Ms. Thompson retaliated against the Plaintiff when she issued an unfair and inaccurate rating of record to Dr. Onwudiwe under the Agency's Performance Management Appraisal Program.

60.     On April 24, 2019, Mr. Dean discriminated against the Plaintiff because of her race, sex, and national origin and retaliated against her when he proposed to suspend Dr. Onwudiwe based upon false allegations, and on June 24, 2019, the Agency, through Mark Askine, suspended Dr. Onwudiwe for five days effective Tuesday, June 25 through Saturday, June 29, 2019. Similarly situated co-workers, for example CN (White woman), LP (White woman), AK (Asian male), were not subjected to unfair adverse actions and unwarranted behaviors in their work environment.

### Performance Related Harassment

61.     On January 18, 2018, Ms. Thompson retaliated against the Plaintiff when she issued an official written reprimand to Dr. Onwudiwe based upon false information.

62.     Beginning in January 2019 and continuing to present, Ms. Thompson and Mr. Dean discriminated against the Plaintiff because of her age, race and national origin and retaliated against her when they repeatedly changed the order of pending ERT consult assignments and presented the Plaintiff with conflicting information.

63.     On February 28, 2019, after Dr. Onwudiwe's request for a promotion, Mr. Dean discriminated against the Plaintiff because of her age, race, sex, and national origin and retaliated against her when he unfairly criticized Dr. Onwudiwe's performance without providing example; instituted a new reporting structure with a change in supervisor to an individual previously subject of Dr. Onwudiwe's complaints; issued a new FY 19 performance plan and supplemented it via email with unreasonable performance standards, deadlines and demands that are inconsistent with Agency policy and Dr. Onwudiwe's performance standards; and denied Dr. Onwudiwe sufficient time to review and provide feedback to her rating of record or performance plan.

64.     On February 28, 2019, Ms. Thompson, discriminated against the Plaintiff because of her age and retaliated against her when she informed Dr. Onwudiwe that outside professional activities would not count toward improving Dr. Onwudiwe's performance rating and presented the Plaintiff with conflicting information. However, similarly situated non-African Americans permitted to engage in professional development activities without intense scrutiny and hindrances, as well as the opportunity for these activities towards performance rating. For example, Ms. Christine Corser (White female), Ms. Elizabeth Pepinsky (White female) and Ms. Catherine Gray (White female).

65.     On March 4, 2019, Mr. Dean discriminated against the Plaintiff because of her age, race, sex, and national origin and retaliated against her when he assigned Dr. Onwudiwe an unreasonably shortened deadline on a new assignment (Triferic) by disregarding Dr. Onwudiwe's

requested deadline of 2-3 weeks and instead imposing a deadline of 7 hours. A similar unreasonable deadline was issued on March 13, 2019, by Mr. Dean. Similarly situated co-workers, for example Ms. Carrie Newcomer (White woman), Ms. Lynn Panholzer (White woman), Mr. Ankur Kalola (Asian male), were not subjected to unfair workload demands.

66.     On March 4 and March 8, 2019, Mr. Dean discriminated against the Plaintiff because of her age, race, sex, and national origin and retaliated against her when he denied Dr. Onwudiwe's request for work resources in the form of credit hours to help complete the Triferic assignment.

67.     On March 15, 2019, Mr. Dean discriminated against the Plaintiff because of her age, race, sex, and national origin and retaliated against her when he accused Dr. Onwudiwe of performance deficiencies in several performance elements but failed to provide any examples to support the alleged deficiencies.

68.     On March 21, 2019, Mr. Dean discriminated against the Plaintiff because of her age, race, sex, and national origin and retaliated against her when he placed unrealistic demands on Dr. Onwudiwe regarding workload and deadlines and denied Dr. Onwudiwe's request for work resources in the form of credit hours to complete the assigned workload.

69.     On March 25, 2019, Mr. Dean discriminated against the Plaintiff because of her age, race, sex, and national origin and retaliated against her when he provided false and misleading information regarding a manufacturer's submission under review by the Agency to support shortening Dr. Onwudiwe's review period for the submission to five business days.

70.     On March 25, 2019, Mr. Dean discriminated against the Plaintiff because of her age, race, sex, and national origin and retaliated against her when he falsely accused Dr. Onwudiwe of poor performance and issued a written counseling and coaching memorandum.

71.    On March 27, 2019, Mr. Dean discriminated against the Plaintiff because of her age, race, sex, and national origin and retaliated against her when he added another assignment to Dr. Onwudiwe's workload and demanded that the assignment be completed within 4 business days but denied Dr. Onwudiwe's request for 4 credit hours for the assignment.

72.    On March 27, 2019, Mr. Dean discriminated against the Plaintiff because of her age, race, sex, and national origin and retaliated against her when he falsely accused Dr. Onwudiwe of poor performance, of refusing to walk Mr. Dean through her work process, and issued another written counseling and coaching memorandum.

73.    On March 27, March 28, and April 1, 2019, Mr. Dean discriminated against the Plaintiff because of her age, race, sex, and national origin and retaliated against her when he issued Dr. Onwudiwe with a written reprimand and falsely accused her of not adequately responding to his emails and/or requests for information.

74.    On April 2, 2019, and on several occasions thereafter, Mr. Dean discriminated against the Plaintiff because of her age, race, sex, and national origin and retaliated against her when he falsely accused Dr. Onwudiwe of not operating efficiently with respect to work assignments.

75.    On April 2, 2019, and on several other occasions including April 9 and April 24, Mr. Dean discriminated against the Plaintiff because of her age, race, sex, and national origin and retaliated against her when he interfered with Dr. Onwudiwe's work activities and placed unreasonable deadlines upon her regarding responding to emails.

76.    On May 9, 2019, Mr. Dean discriminated against the Plaintiff because of her disability, age, race, sex, and national origin and retaliated against her when he accused Dr.

Onwudiwe of having performance deficiencies with the Asparias assignment without providing any explanation or justification.

77.     On May 24, 2019, Mr. Dean discriminated against the Plaintiff because of her disability, age, race, sex, and national origin and retaliated against her when he criticized Dr. Onwudiwe's work performance on a work assignment but refused to provide feedback to Dr. Onwudiwe despite her request for feedback.

78.     On June 3, 2019, and on several other occasions, Mr. Dean discriminated against the Plaintiff because of her disability, age, race, sex, and national origin and retaliated against her when he interfered with Dr. Onwudiwe's work performance and failed to consider factors related to the task to be accomplished, including such factors as manageability of workload, time limits, feasibility and/or other unique factors. Similarly situated co-workers, Ms. Carrie Newcomer (White woman), Ms. Lynn Panholzer (White woman), Mr. Ankur Kalola (Asian male), were not subjected to unfair workload demands and work environment.

79.     On June 3, 2019, Mr. Dean discriminated against the Plaintiff because of her disability, age, race, sex, and national origin and retaliated against her when he criticized Dr. Onwudiwe's work performance without justification and requested that Dr. Onwudiwe perform a work assignment that was not part of her job duties and responsibilities and which was demeaning to Dr. Onwudiwe.

80.     On June 7, 2019, Mr. Dean discriminated against the Plaintiff because of her disability, age, race, sex, and national origin and retaliated against her when he undermined Dr. Onwudiwe's performance and contributions to the Agency when he criticized Dr. Onwudiwe's work as being "not reviewer friendly, sometimes hard to understand, and sometimes nonresponsive to the actual questions asked." These disparaging comments were allegedly based

upon Mr. Dean having solicited "feedback from staff" and conducting interviews with colleagues of Dr. Onwudiwe regarding her work performance in 2018, despite not doing the same for other employees.

81.     On several occasions, including on June 11, 2019 and June 14, 2019, Mr. Dean discriminated against the Plaintiff because of her disability, age, race, sex, and national origin and retaliated against her when he subjected Dr. Onwudiwe to increased scrutiny and criticized her work performance based upon an inaccurate evaluation of her job performance that disregarded objective performance standards. Mr. Dean continued to be dismissive of Dr. Onwudiwe's request for clarification and feedback with regard to her work assignments.

82.     On June 11, 2019, and on other occasions, OPDP management, including Mr. Dean on June 11, 2019, discriminated against the Plaintiff because of her disability, age, race, sex, and national origin and retaliated against her when they required Dr. Onwudiwe to perform duties below her grade level and inconsistent with her position description. On June 11, 2019, Mr. Dean told Dr. Onwudiwe that there was no ERT related work and requested that Dr. Onwudiwe attend several orientation trainings for new employees so that she could then perform duties outside of her position description. On June 14, 2019, Mr. Dean informed Dr. Onwudiwe that he was going to assign her work that was not consistent with her position description. Similarly situated co-workers, for example Ms. Carrie Newcomer (White woman), Ms. Christine Bradshaw (White woman), Ms. Lynn Panholzer (White woman), Mr. Ankur Kalola (Asian male), Ms. Nazia Fatima, (Asian woman) were not subjected to unfair assignment of work and professional development and career progression opportunities.

83.     On June 14, 2019, Mr. Dean discriminated against the Plaintiff because of her disability, age, race, sex, and national origin and retaliated against her when he misrepresented

important facts regarding Dr. Onwudiwe's work and the submission of ERT related claims in promotional materials.

## Time and Attendance Related Harassment

84.     Since May 2018, and continuing to date, the Agency, by and through Ms. Thompson and Mr. Dean and others, retaliated against the Plaintiff when they treated Dr. Onwudiwe differently in regard to the application of the Agency's policies regarding credit hours.

85.     On February 28, 2019, Mr. Dean discriminated against the Plaintiff because of her disability, age, race, sex, and national origin and retaliated against her when he instructed Dr. Onwudiwe to comply with a different leave requirement that forced her to notify her supervisor in advance of submitting leave requests in the system. Similarly situated co-workers, for example Ms. Carrie Newcomer (White woman), Ms. Christine Bradshaw (White woman), Ms. Lynn Panholzer (White woman), Mr. Ankur Kalola (Asian male), Ms. Nazia Fatima, (Asian woman) were not subjected to same leave policies and procedures.

86.     On or about March 1, 2019, Dr. Onwudiwe's was retaliated against when her tour of duty in the Agency's system was changed without her knowledge or consent.

87.     On March 1, 2019, Mr. Dean falsely discriminated against the Plaintiff because of her disability, age, race, sex, and national origin and retaliated against her when he accused Dr. Onwudiwe of arriving late to work and failing to respond to his email in a timely manner.

88.     On March 4, 2019, Mr. Dean retaliated against the Plaintiff when he falsely accused Dr. Onwudiwe of not following the Agency's Alternate Work Schedule policy.

89.     On March 5, 2019, Mr. Dean discriminated against the Plaintiff because of her disability, age, race, sex, and national origin and retaliated against her when he attempted to

monitor and track Dr. Onwudiwe's attendance and falsely accused her of time and attendance fraud.

90.     On March 15, 2019, Mr. Dean discriminated against the Plaintiff because of her disability, age, race, sex, and national origin and retaliated against her when he denied Dr. Onwudiwe credit hours needed to complete the Triferic enforcement assignment.

91.     On March 20, 2019, Mr. Dean retaliated against the Plaintiff when he reprimanded and falsely accused Dr. Onwudiwe of a time and attendance related offense.

92.     On April 10, 2019, Mr. Dean discriminated against the Plaintiff because of her disability, age, race, sex, and national origin and retaliated against her when he subjected Dr. Onwudiwe to different requirements for requesting leave and accused her on April 24, 2019 of not following supervisory instructions.

**Professional Development<br>Related Harassment**

93.     On January 23, 2019, Ms. Bane and CDER ethics officials retaliated against the Plaintiff when they subjected Dr. Onwudiwe to different guidelines regarding approval of outside activities.

94.     On February 5, 2019, Ms. Patricia Reilly retaliated against the Plaintiff when she threatened Dr. Onwudiwe with administrative action regarding an issue concerning outside activities of Dr. Onwudiwe but Ms. Reilly based her threat on false information.

95.     On February 26, 2019, and on several occasions before and after, Asim Akbari, Emily Bane, and other CDER ethics officials, retaliated against the Plaintiff when they subjected Dr. Onwudiwe to different and changing guidelines and policies that govern outside activities and accused her of wrongdoing regarding such activities or following related policies.

96.     On March 13, 2019, and on several occasions thereafter, OPDP Office Director Thomas Abrams discriminated against the Plaintiff because of her age, race, sex, and national origin and retaliated against her when he denied Dr. Onwudiwe access to career development opportunities. Similarly situated co-workers, for example Ms. Christine Corser (White woman), Elizabeth Pepinsky (White woman) and Catherine Gray (White woman),  were not subjected to interference in professional development and career progression opportunities.

97.     On March 22, 2019, Emily Bane retaliated against the Plaintiff when she issued Dr. Onwudiwe a new requirement for publishing research articles.

98.     On March 26, 2019, Ms. Bane retaliated against the Plaintiff when she falsely accused Dr. Onwudiwe of violating ethics rules regarding a publication that had been approved by Dr. Onwudiwe's supervisor in 2016.

99.     On March 28, 2019, Ms. Bane retaliated against the Plaintiff when she issued Dr. Onwudiwe new guidelines regarding the use of disclaimer language for outside activities and Ms. Bane sent a confirmation email as it pertains to written activities on April 8, 2019 and a confirmation email as it pertains to speaking activities on April 17, 2019.

100.     On April 25, 2019, Ms. Bane retaliated against the Plaintiff when she informed Dr. Onwudiwe that OPDP management officials issued different guidelines for Dr. Onwudiwe regarding outside activities.

101.     On April 29, 2019, Mr. Dean discriminated against the Plaintiff because of her disability, age, race, sex, and national origin and retaliated against her when he falsely accused Dr. Onwudiwe of noncompliance with Agency ethics rules regarding outside activities and issued

a reprimand to Dr. Onwudiwe with a threat that future action will be taken if Dr. Onwudiwe

continues to perform an outside activity.

102.    On April 29, 2019, Mr. Dean discriminated against the Plaintiff because of her

disability, age, race, sex, and national origin and retaliated against her when he provided false and

misleading information to the Agency regarding Dr. Onwudiwe's outside activity and cancelled a

training that Dr. Onwudiwe needed for professional development.

103.    On May 1, 2019, Mr. Dean discriminated against the Plaintiff because of her

disability, age, race, sex, and national origin and retaliated against her when he issued Dr.

Onwudiwe new guidelines for submission of HHS 520 forms.

104.    On May 3, 2019, and on several occasions thereafter, Dr. Onwudiwe was retaliated

against when her participation in outside professional development activities was handled by the

Agency under different guidelines and the processing of Dr. Onwudiwe's requests were delayed,

including delays in processing of HHS 520 forms.

105.    On several occasions, including on May 20, 2019, Mr. Dean discriminated against

the Plaintiff because of her disability, age, race, sex, and national origin and retaliated against her

when he subjected Dr. Onwudiwe to unwarranted scrutiny and monitoring regarding her outside

activities.

106.    On June 14, 2019, Mr. Dean discriminated against the Plaintiff because of her

disability, age, race, sex, and national origin and retaliated against her when he withheld training

opportunities from Dr. Onwudiwe that are needed for professional development and advancement.

### General Hostile Work Environment and
### Harassment

107.    On February 28, 2019, Mr. Dean discriminated against the Plaintiff because of her

age, race, sex, and national origin and retaliated against her when he informed Dr. Onwudiwe of

a new reporting structure that would impact how she could report complaints, including elevating everything through the chain of command, that was not in accordance with the Agency's grievance and/or EEO policies and processes.

108. On March 15, 2019, and on several occasions thereafter, Mr. Dean discriminated against the Plaintiff because of her age, race, sex, and national origin and retaliated against her when he falsely accused Dr. Onwudiwe of behavioral misconduct, including failing to respond to him in a timely manner.

109. On an ongoing basis, and as recently as April 24, 2019, Mr. Dean retaliated against the Plaintiff when he began sending aggressive and hostile emails to Dr. Onwudiwe.

110. On several occasions, including during one-on-one meetings and as recently as April 30, 2019, Mr. Dean discriminated against the Plaintiff because of her age, race, sex, and national origin and retaliated against her when he yelled at Dr. Onwudiwe in an angry tone. Similarly situated non-African American co-workers, for CB (White woman), KK (White woman), AK (Asian male), were not subjected to hostile work environment and unwarranted demeaning behaviors in their work environment.

111. On April 30, 2019, Ms. Jacqueline Corrigan-Curay retaliated against the Plaintiff when she falsely accused Dr. Onwudiwe of providing misinformation to an event sponsor regarding an invitation to speak at a conference on Real World Evidence, and then Ms. Corrigan-Curay advocated for the cancellation of a professional development training that Dr. Onwudiwe needed to support her career growth and development.

112. On May 3, 2019, the Agency by and through Ms. Deborah Young, Labor and Employee Relations Specialist, retaliated against the Plaintiff when she issued Dr. Onwudiwe a

warning in writing informing the Plaintiff to not keep her apprised of hostile workplace matters related to Dr. Onwudiwe's harassment complaint against Mr. Dean.

113.    On May 9, 2019, Ms. Bane retaliated against the Plaintiff when she sent a hostile email with all capital letters to Dr. Onwudiwe and then Mr. Dean supported Ms. Bane's actions when he indicated he did not find the email to be unprofessional or offensive but rather made an unfair comparison when attempted to compare Ms. Bane's to email to emails that Dr. Onwudiwe had previously sent. Mr. Dean. Mr. Dean discriminated against the Plaintiff because of her race and national origin and retaliated against her when he then sent Dr. Onwudiwe a copy of the Agency Standards of Conduct.

114.    On June 24, 2019, Mr. Dean discriminated against the Plaintiff because of her disability, age, race, sex, and national origin and retaliated against her when he sent a harassing and fear inducing email to Dr. Onwudiwe regarding her eligibility for FMLA and use of FMLA leave.

115.    On June 24, 2019, Mr. Dean and Mr. Askine discriminated against the Plaintiff because of her disability, age, race, sex, and national origin and retaliated against her when they alleged that Dr. Onwudiwe's work performance was poor and requested an impromptu, face-to-face meeting to discuss her work performance and assignments despite Mr. Dean's previous refusals to provide any feedback in response to Dr. Onwudiwe's requests.

116.    Beginning on or about July 2019, the Agency, by and through Dr. Onwudiwe's supervisory chain, including but not limited to Mr. Robert Dean, discriminated against the Plaintiff because of her disability, age, race, sex, and national origin and retaliated against her when they continued to give Dr. Onwudiwe assignments that are inconsistent with her position of record,

duties, skills and experience, while refusing to assign her duties outside of, and inconsistent with, her position description.

117.   Beginning on or about July 2019, the Agency, by and through Robert Dean, discriminated against the Plaintiff because of her disability, age, race, sex, and national origin and retaliated against her when they continued to subject Dr. Onwudiwe to unfair work assignments without sufficient resources and without consideration to circumstances surrounding such assignments, to include reasonableness of deadlines, type of work, consistency with Dr. Onwudiwe's experience and skill level and other pending assignments.

118.   On July 1, 2019, the Agency, through Patricia Reilly and other management officials, retaliated against the Plaintiff when they subjected Dr. Onwudiwe to differing guidelines governing outside professional activities, including as it relates to the Agency's required disclaimer language.

119.   On July 1, 2019, the Agency, through Mr. Dean, retaliated against the Plaintiff when they falsely accused Dr. Onwudiwe of misconduct and subjected her to different guidelines governing outside professional activities when he requested the final agenda, invitation to Dr. Onwudiwe to speak, and all email communications between the event organizer and Dr. Onwudiwe in advance of any review by Mr. Dean of Dr. Onwudiwe's request to perform the outside activity.

120.   On July 1, 2019, Robert Dean retaliated against the Plaintiff when he accused Dr. Onwudiwe of failing to meet compliance for her tour of duty in the Agency's activity-based time utilization data collection system but refused to provide clarification in response to questions from Dr. Onwudiwe regarding the accusation.

121.    On July 1, 2019, Robert Dean discriminated against the Plaintiff because of her sex and retaliated against her when he continued his harassment of Dr. Onwudiwe, including threatening and intimidating behavior, by insisting that Dr. Onwudiwe meet with him alone despite her prior statements to the Agency's Human Resources personnel regarding her safety concerns regarding Mr. Dean.

122.    On July 1, 2019, Robert Dean discriminated against the Plaintiff because of her disability, age, race, sex, and national origin and retaliated against her when he continued his harassment of Dr. Onwudiwe by reprimanding her for seeking clarification regarding work assignments.

123.    On or about, July 6, 2019, the Agency discriminated against the Plaintiff because of her race and national origin and retaliated against her when they and retaliated against Dr. Onwudiwe by improperly suspending Dr. Onwudiwe without pay for an additional five days, including July 1, 2019 through July 5, 2019, and denying her pay for those dates despite Dr. Onwudiwe working on those dates and being entitled to holiday pay for July 4, 2019. The Agency failed to provide Dr. Onwudiwe any due process rights related to this unlawful deprivation of pay.

124.    On July 8, 2019, Robert Dean retaliated against the Plaintiff when he continued his harassment of Dr. Onwudiwe by imposing additional requirements for Dr. Onwudiwe to request leave, including making duplicate requests through the Agency's time and attendance system and through Outlook email.

125.    On July 18, 2019, the Agency, by and through Jacqueline Corrigan Curay, retaliated against the Plaintiff when they accused Dr. Onwudiwe of wrongdoing related to the Agency's ethics regulations because Dr. Onwudiwe's agency title was inadvertently placed in a downloadable presentation file by an outside company's graphic designer.

126.    On July 24, 2019 and on several other occasions, Robert Dean discriminated against the Plaintiff because of her disability, age, race, sex, and national origin and retaliated against her when he has discouraged Dr. Onwudiwe's participation in regular performance communications and feedback that supports effective performance management. On July 22, 2019 and July 24, 2019, Robert Dean set the agendas for the mid-year performance meeting that was limited in scope and did not reflect work accomplishments since the beginning of the performance cycle. On July 22, 2019 and July 24, 2019, Robert Dean requested via email that Dr. Onwudiwe provide him a list of her accomplishments since May 22, 2019 ("I am instructing you to send me a comprehensive summary of work you have accomplished since 5/22/19 so that our PMAP discussion will be of value."). Plaintiffs similarly situated non-African American co-workers, for example CB (White female), AK (Asian male), were not subjected to such performance management parameters and misaligned guidelines.

127.    On July 24, 2019, July 29, 2019, and on several occasions, Robert Dean and other management officials retaliated against the Plaintiff when they caused delays in processing Dr. Onwudiwe's HHS-520 forms and subjected her to changing and differing guidelines and policies that are inconsistent with the guidelines and policies that govern outside activities at the Agency. Specifically, on July 24, 2019, Robert Dean communicated that the information he requested (e.g., "final agenda" and "speaker invitation") as conditions of approval for her HHS-520s must be submitted prior to his review and Dr. Onwudiwe should anticipate further delays because of his workload, despite the 30-day review period.

128.    On July 29, 2019 and on several other occasions, Robert Dean and other management officials retaliated against the Plaintiff when they denied Dr. Onwudiwe's request for training needed for self-development and enhancement of job performance. On July 29, 2019,

Robert Dean denied Dr. Onwudiwe's request for Pharmacoeconomics training needed for self-development and enhancement of job performance in her program area despite consistently claiming that Dr. Onwudiwe's performance in this area is poor.

129.    On July 30, 2019, Robert Dean discriminated against the Plaintiff because of her disability, age, race, sex, and national origin and retaliated against her when he evaluated Dr. Onwudiwe's mid-year performance on specific, unmeasurable tasks that were limited in scope, inconsistent, and did not reflect work accomplishments since the beginning of the performance cycle.

130.    On July 30, 2019 and on multiple occasions, Robert Dean and other management officials retaliated against the Plaintiff when they conducted Dr. Onwudiwe's performance evaluation on the last day of the performance review period, which deprived Dr. Onwudiwe of a reasonable time period to review prior to signing the performance plan or providing a rebuttal.

131.    On July 30, 2019, Robert Dean retaliated against the Plaintiff when he threatened Dr. Onwudiwe with placement on a performance improvement plan in 30 days without justification.

132.    On July 30, 2019, Robert Dean discriminated against the Plaintiff because of her disability, age, race, sex, and national origin and retaliated against her when he proposed to suspend Dr. Onwudiwe for 14 days for allegedly failing to follow instructions after he refused to respond to Dr. Onwudiwe's request for clarification of his instructions, and following Dr. Onwudiwe's complaints about the Agency tampering with the payroll system to effectively suspend her for a second five-day period.

133.    On July 31, 2019, Robert Dean discriminated against the Plaintiff because of her disability, age, race, sex, and national origin and retaliated against her when he denied Dr.

Onwudiwe's request for 4 hours sick leave with no reason and recoded her as regular hours without her knowledge. Plaintiffs similarly situated non-African American co-workers, for example Ms. Katie Klemm (White female), were not subjected to scrutiny, interrogation, denial when it came to requesting and using sick leave.

### Fourteen-Day Suspension

134.   On January 7, 2020, the Agency discriminated against the Plaintiff because of her race and national origin and retaliated against her when they and retaliated against Dr. Onwudiwe by suspending Dr. Onwudiwe from duty and without pay for fourteen days.

### Ongoing Unfair and Damaging Criticism

135.   On November 26, 2019, Robert Dean discriminated against the Plaintiff because of her disability, age, race, sex, and national origin and retaliated against her when he communicated to Dr. Onwudiwe that her completed work assignment for the medical product Emgality has First Amendment issues, but Mr. Dean failed to state, clarify or explain what the First Amendment issues were when asked repeatedly by Dr. Onwudiwe. This is part of a pattern of discrimination and retaliation related to unwarranted criticism of, and interference with, Dr. Onwudiwe's work performance.

136.   On November 26, 2019, and on several other occasions, Dr. Onwudiwe was falsely accused of, and reprimanded for, poor performance without just cause, and deprived of necessary resources when Mr. Dean discriminated against the Plaintiff because of her disability, age, race, sex, and national origin and retaliated against her when he communicated to Dr. Onwudiwe that "I'm going to give you this assignment" for Latuda, "to be treated as launch advisory instead of a non-launch advisory," because: 1) "Delayed ERT consults" 2) "For you to understand the pressure of the reviewer" 3) "Appreciate the succinct manner the review staff writes their objection";

however, Mr. Dean was unwilling or unable to offer a reason to support his position or a rationale behind his statements.

137.    On December 4, 2019, Mr. Dean discriminated against the Plaintiff because of her disability, age, race, sex, and national origin and retaliated against her when he continued his harassment of Dr. Onwudiwe by reprimanding her for seeking clarification regarding a change in work assignments and abrupt changes to her areas of responsibility for no real reason.

138.    On December 4, 2019 and on multiple other occasions, Mr. Dean discriminated against the Plaintiff because of her disability, age, race, sex, and national origin and retaliated against her when he falsely accused Dr. Onwudiwe of poor performance and issued a written counseling and coaching memo but was incapable or unwilling to articulate the issues to be corrected to improve performance.

**Inhibiting Plaintiff's Work**

139.    On November 26, 2019, Mr. Dean discriminated against the Plaintiff because of her disability, age, race, sex, and national origin and retaliated against her when he transferred work assignment for the medical product Latuda from another employee in the Division of Advertising & Promotion Review 1 (DAPRI), with a different position description, to Dr. Onwudiwe stating that there continues to be no work assignments available that are consistent with Dr. Onwudiwe's position description and previous work assignments. Plaintiffs similarly situated non-African American co-workers, for example Ms. Christine Bradshaw (White female), Mr. Ankur Kalola (Asian male), were differently when it came to the assignment of work.

140.    Beginning on or around November 26, 2019, Dr. Onwudiwe was retaliated against when she received daily taunting email notifications regarding her outside activity renewal that appears to have been enabled by CDER Ethics. The Agency has expressed their dissatisfaction

with the level of professional development activities that the Plaintiff was engaged in as outside activities.

141.    On December 4, 2019 and on multiple other occasions, Mr. Dean discriminated against the Plaintiff because of her disability, age, race, sex, and national origin and retaliated against her when he directed Dr. Onwudiwe to perform work that involved clerical, administrative, or specialized support functions while refusing to assign her work that is consistent with position description and previous work assignments.

142.    On December 5, 2019, Mr. Dean discriminated against the Plaintiff because of her disability, age, race, sex, and national origin and retaliated against her when he continued to subject Dr. Onwudiwe to a hostile work by denying Dr. Onwudiwe's request for an extension without a legitimate justification ("I do not feel as though this requires an extension. It is a fairly straightforward question") and refused to clarify his reason for the denial ("My response is self-explanatory").

143.    On December 6, 2019, the Agency, by and through Mr. Dean, discriminated against the Plaintiff because of her disability, age, race, sex, and national origin and retaliated against her when he continued to undermine and interfere with Dr. Onwudiwe's ability to participate in outside activities for professional development and career growth opportunities.

144.    On December 12, 2019, Dr. Onwudiwe notified Tania Tse, Director of the Human Resources, and requested that her office conduct an administrative inquiry into the lack of work assignments assigned to Dr. Onwudiwe for approximately one year (or greater) in her specific functional area as the Subject Matter Expert/Consultant on PRO/PE claims, but Dr. Onwudiwe has not received a response or acknowledgement of her concerns. The Plaintiff was discriminated

against because of her race and national origin and retaliated against when her complaint did not receive acknowledgment or any action by the Agency to date.

145.    On January 7, 2020, Mr. Dean continued to retaliate against the Plaintiff when he subjected Dr. Onwudiwe to a hostile work environment by minimizing Dr. Onwudiwe's concern regarding the delay ("catching up on higher priority issues) in Mr. Dean signing off on Dr. Onwudiwe's Work at Home (WAH) Agreement that has been in his possession for 30 days.

### Threatening and Intimidating Plaintiff

146.    On November 26, 2019 and on multiple other occasions, Mr. Dean discriminated against the Plaintiff because of her race, sex, and national origin and retaliated against her when he displayed conduct and speech that was threatening, intimidating and verbally abusive, including, but not limited to, when he insisted that Dr. Onwudiwe ask her questions regarding the Latuda assignment during their in-person 1:1 meeting even though he had not notified her in advance the discussion would be requested or required. He stated, "I'm instructing you to answer my questions now" and "I'm going to have to force my hand." His tone was elevated and forceful. Dr. Onwudiwe perceived these comments as a threat. The Agency discriminated against the Plaintiff because of her race, sex, and national origin and retaliated against her when they did not acknowledge her harassment complaint or make any attempts to date resolve the issue or accommodate her.

147.    On November 29, 2019, Dr. Onwudiwe notified Ms. Tse and Mark Askine, Deputy Office Director, Office of Prescription Drug Promotion (OPDP), first-line supervisor for Mr. Dean, about the November 26, 2019 incident of verbal abuse during her 1:1 meeting with Mr. Dean, as well as escalating patterns of verbal abuse. Dr. Onwudiwe has not received a response or acknowledgement of her concerns. The Agency discriminated against the Plaintiff because of

her race, sex, and national origin and retaliated against her when they did not acknowledge her harassment complaint or make any attempts to date resolve the issue or accommodate her.

148.    On December 17, 2019, Mr. Dean retaliated against the Plaintiff when he falsely accused Dr. Onwudiwe of threatening him with a discrimination lawsuit and expressed criticism of the federal sector EEO complaint process in order to undermine Dr. Onwudiwe's continued opposition to ongoing harassment and discrimination and further participation in the EEO process.

149.    On December 17, 2019, following Dr. Onwudiwe's request for a Union representative to be present during meetings with Mr. Dean due to repeated reports of her safety concerns concerning Mr. Dean's threatening behavior, Mr. Dean retaliated against the Plaintiff when he made a false claim against the Union and denied Dr. Onwudiwe Union representation at future 1:1 meetings with him.

**Unfair Performance Requirements**

150.    On January 22, 2020, Robert Dean discriminated against the Plaintiff because of her disability, age, race, sex, and national origin and retaliated against her when he indicated that Dr. Onwudiwe's performance would be evaluated based on specific elements in her performance plan, despite Mr. Dean not assigning Dr. Onwudiwe tasks that would fulfill those requirements.

**Different Standards for Requesting Family Medical Leave Act (FMLA) Leave**

151.    On January 30, 2020, Mark Askine discriminated against the Plaintiff because of her disability, age, race, sex, and national origin and retaliated against her when he required Dr. Onwudiwe to follow a different process for requesting leave under FMLA. Specifically, Dr. Onwudiwe was required to provide additional information for certification despite Dr. Onwudiwe already having the proper medical certification on file. Plaintiffs similarly situated non-African

33

American co-workers, for example KK (White female), were not subjected to intense scrutiny and inquiry.

152.    On January 31, 2020, Robert Dean and Lisa Doward retaliated against the Plaintiff when they communicated misinformation with regards to Dr. Onwudiwe's use of FMLA leave and subjected her to a different process for use of FMLA leave.

153.    On February 11, 2020, Robert Dean discriminated against the Plaintiff because of her disability, age, race, sex, and national origin and retaliated against her when he held Dr. Onwudiwe to a different standard by not indicating what information was needed to fulfill her request for sick and FMLA leave; and not giving her sufficient time to provide that information.

154.    On or about February 26, 2020, the Agency retaliated against Dr. Onwudiwe when they subjected her to a different FMLA process. Specifically, they contacted Dr. Onwudiwe's healthcare provider and obtained medical information, despite there already being a signed and completed FMLA medical certification on file with the Agency.

**Failure to Promote Safe Work Environment**

155.    On January 22, 2020, the Agency discriminated against the Plaintiff because of her race and national origin and retaliated against her when they failed to promote a safe work environment, when management failed to respond to Dr. Onwudiwe's email following up on a prior request for a change in her reporting structure due to concerns of Dr. Onwudiwe being exposed to a hostile and unsafe work environment. Dr. Onwudiwe has not received acknowledgment of her email and no action has been taken to remove Dr. Onwudiwe from the threatening environment. Plaintiffs similarly situated non-African American co-workers, for example OS (White female), were treated differently when it came to making a complaint of hostile or unmanageable workplace environment.

**Outside Activities**

156.     On January 22, 2020 and on multiple other occasions, Robert Dean and other management officials undermined discriminated against the Plaintiff because of her age, race, sex, and national origin and retaliated against her when he Dr. Onwudiwe's participation in outside activities such as when, on January 27, 2020, Patricia Reilly and the CDER Ethics office subjected Dr. Onwudiwe to a different approval process for participation in a Biosimilars outside activity.

157.     As a result of management's unexplained delay in approving Dr. Onwudiwe's outside activities, the retaliatory behavior directed towards the Plaintiff for engaging in professional development required that she make last-minute travel arrangements which cost her additional money to attend.

**Additional Harassment**

158.     On April 23, 2020, Robert Dean discriminated against the Plaintiff because of her disability, age, race, sex, and national origin and retaliated against her when he issued Dr. Onwudiwe a performance rating of 2.17 out of 5, without justification. Mr. Dean's appraisal and rating of Dr. Onwudiwe did not properly evaluate her performance against the elements and standards in Dr. Onwudiwe's performance plan or substantiate the significantly decreased rating. As a result of this retaliatory and unfair rating, Dr. Onwudiwe did not qualify for the annual lump sum student loan repayment or the 2019 PMAP Award.

159.     Upon Plaintiff's return from FMLA leave on April 23, 2020, she learned that the Agency, by and through Robert Dean, discriminated against the Plaintiff because of her disability, age, race, sex, and national origin and retaliated against her when they falsely certified that he had met with Plaintiff on February 11, 2020, to conduct a discussion of performance expectations for the 2020 rating cycle and to establish a performance plan, despite the fact that Dr. Onwudiwe was

on FMLA leave at that time and did not meet with Mr. Dean to conduct any discussion of performance expectations for the 2020 rating cycle.

160.   On or about May 18, 2020, Robert Dean discriminated against the Plaintiff because of her disability, age, race, sex, and national origin and retaliated against her when he denied Dr. Onwudiwe's request for temporary promotion and/or increase in pay to a GS-14 level based upon the requirement for Dr. Onwudiwe to perform the duties of a vacant GS-14 or higher position in addition to Plaintiff's own duties. Plaintiffs similarly situated non-African American co-workers, for example CB (White female), AK (Asian male), RC (White female), NF (Asian Female), JK (Asian female), CN (White female), LP (White female), NP (Asian female), ZA (Asian female) and DS (Asian female), were treated more favorably when it came to promotion and career progression opportunities and advancement.

161.   On June 12, 2020, Robert Dean discriminated against the Plaintiff because of her disability, age, race, sex, and national origin and retaliated against her when he failed to follow the Agency policy and procedures for providing reasonable accommodation and apply it fairly as part of her reasonable accommodation request and denied her request for a change in work environment. Similarly situated non-African American co-workers, for example OS (White female), were more likely to receive accommodation in the workplace.

### Case 3: Agency No. HHS-FDACDER-104-20

162.   Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth, herein.

### Constructive Discharge

163.   On August 7, 2020, Dr. Onwudiwe was constructively discharged due to the Agency's ongoing pattern and practice of harassment, failure to address or stop the harassment,

and ongoing failure to reasonably accommodate her. The Plaintiff during her tenure at the Agency has been subjected to discrimination because of her disability, age, race, sex, and national origin and retaliated against.

## COUNT ONE
### Race Discrimination
42 U.S.C. § 2000e-2(a)(1)
*(African American)*

164.   Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth, herein.

165.   Plaintiff has exhausted her administrative remedies under Title VII of the Civil Rights Act of 1964, as amended.

166.   Defendants are "persons" within the meaning of 42 U.S.C. § 1983.

167.   At all times relevant to this Complaint, Defendants and their agents were acting under color of the laws, customs and usages of the State of Maryland within the meaning of 42 U.S.C. § 1983.

168.   Plaintiff is a member of a protected class, as she is African-American.

169.   Defendants discriminated against Plaintiff because of her race in violation of Title VII, 42 U.S.C. § 2000e-(2)(a), by engaging in, tolerating or failing to prevent the race-based harassment alleged herein and by failing to take affirmative action to correct and redress these unlawful employment practices.

170.   During Plaintiff's employment, Agency officials, including but not limited to Mr. Dean and Ms. Thompson, subjected Plaintiff to offensive and harassment actions. Plaintiff clearly indicated that the conduct was unwelcome. Plaintiff did not solicit or incite the conduct and she perceived the conduct to be  offensive and/or undesirable.

171.     This conduct and other incidents of harassment described above were because of Plaintiff's race, and Plaintiff did not see Agency officials harass the non-African American employees in the manner she was being harassed.

172.     The harassment directed at Plaintiff was either intended to cause her severe emotional distress or was perpetrated with malice or reckless indifference to the likelihood that it would cause such distress. Defendant is, therefore, liable to Plaintiff for all damages proximately resulting from the distress she has suffered relating to the conduct of Defendant.

173.     Due to Defendants' actions, Plaintiff was humiliated, embarrassed, and made to endure a great amount of pain and suffering and such impact is on-going and permanent in nature.

174.     Plaintiff has incurred lost wages and loss of career opportunity, now and into the future, without Plaintiff contributing any negligence thereto.

**COUNT TWO**
**Sex Discrimination**
42 U.S.C. § 2000e-2(a)(1)
*(Female)*

175.     Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth, herein.

176.     Plaintiff has exhausted her administrative remedies under Title VII of the Civil Rights Act of 1964, as amended.

177.     Defendants are "persons" within the meaning of 42 U.S.C. § 1983.

178.     At all times relevant to this Complaint, Defendants and their agents were acting under color of the laws, customs and usages of the State of Maryland within the meaning of 42 U.S.C. § 1983.

179.     Plaintiff is a member of a protected class, as she is a female.

180.     Defendant discriminated against Plaintiff because of her gender in violation of Title VII, 42 U.S.C. § 2000e-(2)(a), by engaging in, tolerating or failing to prevent the sex-based harassment alleged herein and by failing to take affirmative action to correct and redress these unlawful employment practices.

181.     During Plaintiff's employment, Plaintiff was subjected to offensive and harassment actions by Agency officials, including but not limited to Mr. Dean and Ms. Thompson. Plaintiff clearly indicated that the conduct was unwelcome. Plaintiff did not solicit or incite the conduct and she perceived the conduct to be offensive and/or undesirable.

182.     This conduct and other incidents of harassment described above were because of Plaintiff's sex, and Plaintiff did not see Agency officials harass male employees in the manner she was being harassed.

183.     The harassment directed at Plaintiff was either intended to cause her severe emotional distress or was perpetrated with malice or reckless indifference to the likelihood that it would cause such distress. Defendant is, therefore, liable to Plaintiff for all damages proximately resulting from the distress she has suffered relating to the conduct of Defendant.

184.     Due to Defendants' actions, Plaintiff was humiliated, embarrassed, and made to endure a great amount of pain and suffering and such impact is on-going and permanent in nature.

185.     Plaintiff has incurred lost wages and loss of career opportunity, now and into the future, without Plaintiff contributing any negligence thereto.

**COUNT THREE**
**National Origin**
**Discrimination**
42 U.S.C. § 2000e-2(a)(1)
*(Nigerian)*

186.    Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth, herein.

187.    Plaintiff has exhausted her administrative remedies under Title VII of the Civil Rights Act of 1964, as amended.

188.    Defendants are "persons" within the meaning of 42 U.S.C. § 1983.

189.    At all times relevant to this Complaint, Defendants and their agents were acting under color of the laws, customs and usages of the State of Maryland within the meaning of 42 U.S.C. § 1983.

190.    Plaintiff is a member of a protected class, as her national origin is Nigerian.

191.    Defendant discriminated against Plaintiff because of her national origin in violation of Title VII, 42 U.S.C. § 2000e-(2)(a), by engaging in, tolerating or failing to prevent the national origin-based harassment alleged herein and by failing to take affirmative action to correct and redress  these unlawful employment practices.

192.    During Plaintiff's employment, Plaintiff was subjected to offensive and harassment actions by Agency officials, including but not limited to Mr. Dean and Ms. Thompson. Plaintiff clearly indicated that the conduct was  unwelcome. Plaintiff did not solicit or incite the conduct and she perceived the conduct to be  offensive and/or undesirable.

193.    This conduct and other incidents of harassment described above were because of Plaintiff's national origin, and Plaintiff did not see Agency officials harass non-Nigerian employees in the manner she was being harassed.

194. The harassment directed at Plaintiff was either intended to cause her severe emotional distress or was perpetrated with malice or reckless indifference to the likelihood that it would cause such distress. Defendant is, therefore, liable to Plaintiff for all damages proximately resulting from the distress she has suffered relating to the conduct of Defendant.

195. Due to Defendants' actions, Plaintiff was humiliated, embarrassed, and made to endure a great amount of pain and suffering and such impact is on-going and permanent in nature.

196. Plaintiff has incurred lost wages and loss of career opportunity, now and into the future, without Plaintiff contributing any negligence thereto.

**COUNT FOUR**
**Age Discrimination**
29 U.S.C. § 623(a)(1)
*(Year of Birth: 1978)*

197. Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth, herein.

198. Plaintiff has exhausted her administrative remedies under the Age Discrimination in Employment Act of 1967, as codified.

199. Defendants are "persons" within the meaning of 29 U.S.C. § 630.

200. At all times relevant to this Complaint, Defendants and their agents were engaged in an industry affecting commerce in the State of Maryland within the meaning of 29 U.S.C. § 630.

201. Plaintiff is a member of a protected class, as her year of birth is 1978.

202. Defendant discriminated against Plaintiff because of her age in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 623(a)(1), by engaging in, tolerating or

41

failing to prevent the age-based harassment alleged herein and by failing to take affirmative action to correct and redress these unlawful employment practices.

203.    During Plaintiff's employment, Plaintiff was subjected to offensive and harassment actions by Agency officials, including but not limited to Mr. Dean and Ms. Thompson. Plaintiff clearly indicated that the conduct was unwelcome. Plaintiff did not solicit or incite the conduct and she perceived the conduct to be offensive and/or undesirable.

204.    This conduct and other incidents of harassment described above were because of Plaintiff's age, and Plaintiff did not see Agency officials harass younger employees in the manner she was being harassed.

205.    The harassment directed at Plaintiff was either intended to cause her severe emotional distress or was perpetrated with malice or reckless indifference to the likelihood that it would cause such distress. Defendant is, therefore, liable to Plaintiff for all damages proximately resulting from the distress she has suffered relating to the conduct of Defendant.

206.    Due to Defendants' actions, Plaintiff was humiliated, embarrassed, and made to endure a great amount of pain and suffering and such impact is on-going and permanent in nature.

207.    Plaintiff has incurred lost wages and loss of career opportunity, now and into the future, without Plaintiff contributing any negligence thereto.

## COUNT FIVE
### Disability Discrimination
42 U.S.C. § 12112(a)
*(Disability: Mental)*

208.    Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth, herein.

209.    Plaintiff has exhausted her administrative remedies under the Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 121117; and Sections 501 and 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 703 et seq.

210.    Defendants are "persons" within the meaning of 42 U.S.C. § 1983.

211.    At all times relevant to this Complaint, Defendants and their agents were acting under color of the laws, customs and usages of the State of Maryland within the meaning of 42 U.S.C. § 1983.

212.    Plaintiff is a member of a protected class, as she has a mental disability.

213.    Defendant discriminated against Plaintiff because of her disability in violation of the Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 121117; and Sections 501 and 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 703 et seq, by engaging in, tolerating or failing to prevent the disability-based harassment alleged herein and by failing to take affirmative action to correct and redress these unlawful employment practices.

214.    During Plaintiff's employment, Plaintiff was subjected to offensive and harassment actions by Agency officials, including but not limited to Mr. Dean and Mr. Mark Askine. Plaintiff clearly indicated that the conduct was unwelcome. Plaintiff did not solicit or incite the conduct and she perceived the conduct to be offensive and/or undesirable.

215.    This conduct and other incidents of harassment described above were because of Plaintiff's disability, and Plaintiff did not see Agency officials harass non-disabled employees in the manner she was being harassed.

216.    The harassment directed at Plaintiff was either intended to cause her severe emotional distress or was perpetrated with malice or reckless indifference to the likelihood that it

would cause such distress. Defendant is, therefore, liable to Plaintiff for all damages proximately resulting from the distress she has suffered relating to the conduct of Defendant.

217.    Due to Defendants' actions, Plaintiff was humiliated, embarrassed, and made to endure a great amount of pain and suffering and such impact is on-going and permanent in nature.

218.    Plaintiff has incurred lost wages and loss of career opportunity, now and into the future, without Plaintiff contributing any negligence thereto.

**COUNT SIX**
**Retaliation Based Upon Protected Activity**
42 U.S.C. § 2000e-2(a)(1)
(Reprisal)

219.    Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth, herein.

220.    Defendants are "persons" within the meaning of 42 U.S.C. § 1983.

221.    At all times relevant to this Complaint, Defendants and their agents were acting under color of the laws, customs and usages of the State of Maryland within the meaning of 42 U.S.C. § 1983.

222.    Plaintiff has exhausted her administrative remedies under Title VII of the Civil Rights Act of 1964, as amended.

223.    Plaintiff complained verbally and in writing to FDA and HHS management and officials regarding her belief that she was being subjected to unlawful harassment and discriminatory conduct.

224.    Defendant subjected Plaintiff to the aforementioned adverse employment actions because of her participation and opposition to unlawful and discriminatory employment practices in violation of Title VII, Section 1983.

225.   The adverse retaliatory actions to which Plaintiff has been subjected are a direct result of Plaintiff having previously engaged in protected EEO activity.

226.   Similarly, situated employees (no known prior EEO activity) were not subjected to  the same, similar, or any other adverse treatment.

227.   Other employees who were similarly situated, but members of a different protected class than Plaintiff, have received different terms and conditions of employment.

228.   Defendants' unlawful conduct has created a climate of fear and intimidation for Plaintiff and other employees, which creates a chilling effect upon other employees' willingness to engage in protected activity.

229.   Defendants' unlawful conduct negatively impacted the terms, conditions, and privileges of Plaintiff's employment.

230.   Defendants' retaliatory conduct has been intentional, deliberate, willful, malicious, reckless, and in callous disregard of the rights of Plaintiff because of her participation and opposition to Defendants' discriminatory conduct.

231.   Defendant is directly liable for the discriminatory acts or omissions of its agents, servants, and employees while acting within the course and scope of their employment, under the  theory of *Respondeat Superior*.

232.   As a direct and proximate cause of Defendants' conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury, and monetary damages – including, but not limited to, past and future loss of income, benefits, promotion and promotional  opportunities, career opportunities, medical expenses and costs – and is entitled to all available  legal and equitable remedies.

233.    Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering.

234.    Plaintiff has incurred lost wages, loss of reputation and loss of career opportunity, now and into the future, without Plaintiff contributing any negligence thereto.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court:

a. Order the Defendants to reinstate Plaintiff to a new position with new first-line

   supervision;

b. Order the Defendants to appropriately adjust Plaintiff's and Defendants' retirement contributions;

c. Order the Defendants to restore Plaintiff's annual leave hours or, in the alternative, make an equivalent lump sum payment;

d. Order the Defendants to restore Plaintiff's sick leave hours or, in the alternative, make an equivalent lump sum payment;

e. Order the Defendants to approve of Plaintiff's attendance at, and pay the costs of, any training denied to her, and reinstate any other employment benefits denied to her as a result of the discrimination;

f. Order the Defendants to enter into a student loan repayment agreement with Plaintiff;

g. Order the Defendants to adjust Plaintiff's performance years for all years affected, award Plaintiff an appropriate performance award for all years affected, and expunge all negative comments from Plaintiff's performance evaluations;

h. Order the Defendants to expunge all negative documents and adverse actions from personnel files, SF-50s and eOPF;

i. Order the Defendants to restore Plaintiff's retirement fund and TSP to the appropriate amounts;

j. Order the Defendants to amend Plaintiff's personnel files to reflect Plaintiff's correct retirement date;

k. Order the Defendants to reimburse Plaintiff of, and continue to pay, health benefits;

l. Order the Defendants to award Plaintiff retroactive seniority;

m. Order the Defendant institute a policy and procedure to be implemented against discrimination;

n. Equal Employment Opportunity training for Defendant and the supervisory officials at issue herein;

o. Supervisory training for the supervisors at issue herein;

p. Award compensatory damages in excess of Three Hundred Thousand Dollars ($300,000.00);

q. Award medical costs and expenses incurred as a result of Defendants' unlawful conduct;

r. Award lost wages;

s. Award back pay and benefits, with interest;

t. Award future wages;

u. Award reasonable attorney fees, costs, and expenses incurred for this action;

v. Award equitable, declaratory, and injunctive relief; and

w. Award such other and further relief as this Honorable Court deems just and proper.

**Equitable Relief**

235.    Plaintiff hereby incorporates, by reference hereto, the facts, law, and/or allegations contained within the preceding paragraphs, as fully set forth herein.

236.    Because of the actions alleged herein, the continued employment of the supervisors at issue herein without training in equal employment opportunity law, rules and regulations, clear and present dangers to the employees of Defendant and could result in further illegal actions on the party of Defendant, by and through its agents, servants, and employees.

**JURY DEMAND**

Pursuant to Fed. R. Civ. P. 38, Plaintiff demands trial by jury on all issues so triable facts and claims.


June 30, 2021                                                 Respectfully submitted,


                                             By:      */s/ Donna Williams Rucker*
                                                      Donna Williams Rucker (D.C. Bar 446713)
                                                      Tully Rinckey, PLLC
                                                      2001 L Street., NW, Suite 902
                                                      Washington, DC 20036
                                                      (202) 787-1900 (O)
                                                      (202) 640-2059 (F)
                                                      DRucker@fedattorney.com

                                                      *Counsel for Plaintiff*