## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

NNEKA ONWUDIWE,

     Plaintiff,

     v.

XAVIER BECERRA, *Secretary,*
*U.S. Department of Health and*
*Human Services,*

     Defendant.

Civil Action No. TDC-21-1620

### MEMORANDUM OPINION

Plaintiff Nneka Onwudiwe, a former employee of the United States Food and Drug Administration ("FDA"), a component agency of the United States Department of Health and Human Services, has filed suit against the Secretary of Health and Human Services ("HHS"), alleging race discrimination, a hostile work environment, and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e–2000e-17 (2018), and retaliation in violation of the Family Medical and Leave Act ("FMLA"), 29 U.S.C. § 2615 (2018). HHS has filed a Motion to Dismiss, which is fully briefed. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, HHS's Motion will be GRANTED IN PART and DENIED IN PART.

### BACKGROUND

Nneka Onwudiwe, a Black woman, was employed at HHS from August 12, 2012 until August 7, 2020. Between 2012 and 2014, Onwudiwe served as a Pharmacist at the FDA. Between 2014 and 2020, Onwudiwe served as a Consumer Safety Officer. During her time at the FDA,

Onwudiwe was supervised by various individuals, including Mark Askine, Robert Dean, Michael Sauers, Karen Rulli, and Twyla Thompson.  Onwudiwe alleges that, during the time that she was employed at the FDA, she was subjected to race discrimination consisting of disparate treatment and a hostile work environment, in violation of Title VII, and unlawful retaliation in violation of both Title VII and the FMLA.  In particular, Onwudiwe alleges that she was subjected to the following discriminatory conduct at the FDA:  (1) the imposition of different guidelines for participation in outside activities; (2) deprivation of training opportunities; (3) threatening, humiliating, and intimidating conduct; (4) unfair criticism of her performance and negative performance evaluations; (5) the imposition of unfair work assignments and deadlines; (6) suspensions without pay; (7) stricter scrutiny of her time and credit hours; and (8) non-selection for various promotions.

## I.      Outside Activities and Training Opportunities

In the presently operative Second Amended Complaint, Onwudiwe alleges that the FDA subjected her to stricter restrictions on participating in outside professional development activities than similarly situated colleagues who are not Black.  Onwudiwe asserts that, beginning in May 2014, Onwudiwe's supervisors "delayed and denied approval of" her requests to participate in such outside activities.  Second Am. Compl. ("SAC") ¶ 57, ECF No. 45.  She further contends that Thompson, while her supervisor, required her to submit requests to participate in outside activities at least four months in advance, even though the agency generally recommended that such requests be submitted between six and eight weeks in advance.  On at least one occasion, on July 24, 2019, Dean requested that Onwudiwe provide him with copies of the event invitation, final agenda, and all communications between Onwudiwe and the event organizer.  Onwudiwe alleges that the

2

imposition of these heightened standards continued to occur on various occasions through her resignation in 2020.

Relatedly, Onwudiwe alleges that beginning on August 7, 2014, her FDA supervisors "intentionally denied" her professional development and training opportunities that were afforded to similarly situated non-Black colleagues. *Id.* ¶ 58. In particular, Onwudiwe alleges that multiple FDA officials, including Dean, denied her participation in training sessions she wished to attend, or canceled such sessions in their entirety, before they were scheduled to occur on April 29, 2019, April 30, 2019, June 14, 2019, and July 29, 2019.

## II.    Threatening, Humiliating, and Intimidating Conduct

Onwudiwe also alleges that she was subjected to threatening, humiliating, and intimidating conduct by various coworkers and supervisors. She states that beginning in May 2014 and continuing throughout her time at the FDA, she was subjected to "humiliating, belittling, and disparaging comments" and "hurtful and destructive remarks and rumors" about her personality and conduct. *Id.* ¶¶ 43, 60. For example, on October 27, 2014, two of Onwudiwe's coworkers, Breo Ellipta and Ellaine Cunnigham, described Onwudiwe in meeting minutes as "visually angry," "increasingly angrier," "raising her voice," "eye rolling," "head-shaking," "smirking," "sighing," and "creat[ing] a tense and uncomfortable meeting environment." *Id.* ¶ 43. According to Onwudiwe, similarly situated non-Black employees were not described in meeting minutes in this way. Onwudiwe further asserts that on August 6, 2015, Thompson made "several comments threatening [Onwudiwe's] job security." *Id.* ¶ 67. Likewise, Onwudiwe alleges that Dean in particular continuously subjected her to "harassment" and "threatening and intimidating behavior." *Id.* ¶ 141. According to Onwudiwe, on April 30, 2019, Dean "yelled at" Onwudiwe in an "angry tone." *Id.* ¶ 132. On June 24, 2019, Dean sent a "harassing and fear-inducing" email to

Onwudiwe relating to eligibility for the use of FMLA leave. *Id.* ¶ 133. On November 26, 2019, Dean used an "elevated and forceful" tone with Onwudiwe when he stated, "I'm instructing you to answer my questions now" and "I'm going to have to force my hand." *Id.* ¶ 166. Onwudiwe also alleges that Dean insisted that she meet with him one-on-one despite her "safety concerns." *Id.* ¶ 142. Onwudiwe alleges that similarly situated non-Black employees have not been subjected to the same kind of disparaging treatment.

## III.    Criticism of Performance

Onwudiwe also alleges that she was subjected to unfair criticism and reprimands and unjustifiably negative performance evaluations. She asserts that, beginning in May 2014, Dean and Rulli "continuously and unfairly" criticized her work. *Id.* ¶ 56. Onwudiwe alleges that she was subjected to verbal criticism of both individual projects and her overall performance on multiple occasions, including on the following dates: September 12, 2014; July 16, 2015; July 23, 2015; July 29, 2015; September 17, 2015; February 28, 2019; March 15, 2019; March 25, 2019; March 27, 2019; April 2, 2019; May 9, 2019; May 24, 2019; June 3, 2019; June 7, 2019; June 11, 2019; June 14, 2019; June 24, 2019; and December 4, 2019. Onwudiwe also asserts that she was subjected to written criticism of her work on both individual projects and her overall performance, including a written reprimand on January 18, 2018; written counseling memoranda on March 25, 2019 and March 27, 2019; and written reprimands on March 28, 2019 and April 1, 2019.

Furthermore, Onwudiwe also asserts that she was subjected to unjustifiably negative formal performance evaluations, including a negative mid-year performance appraisal on July 23, 2015; an unfair performance evaluation, with a score of 3.16 out of 5, on January 28, 2016; an unfair performance evaluation, with a score of 3.83 out 5, on January 24, 2017; a negative performance evaluation on February 28, 2019; a negative performance evaluation on July 30,

2019; and a negative performance review, with a score of 2.17 out of 5, on March 17, 2020. According to Onwudiwe, supervisors threatened to place Onwudiwe on a Performance Improvement Plan on two occasions: Thompson made such a threat on July 29, 2015, and Dean made such a threat on July 30, 2019. Onwudiwe also alleges that, on several occasions, she did not receive credit, awards, or other recognition for the work she contributed. Onwudiwe asserts that similarly situated non-Black employees were not subjected to such unjustified negative evaluations of their work performance.

## IV.  Workload

Onwudiwe next alleges that she was subjected to an unjustifiably high workload and that many of her assignments were clerical and administrative in nature. In particular, Onwudiwe asserts that, beginning on September 21, 2012, she was subjected to "unmanageable workload demands and deadlines" in a "purposeful attempt to set her up to fail." *Id.* ¶ 48. Onwudiwe further alleges that Dean continuously placed "unrealistic demands" on her and declined her requests for additional time and resources with which to complete the work. *Id.* ¶ 99. According to Onwudiwe, similarly situated non-Black employees were not required to work on such timelines without adequate resources.

Onwudiwe further alleges that beginning on February 24, 2014, FDA management altered her work duties and responsibilities by requiring her to complete tasks unrelated to her position description that she considered to be "below her grade level," *id.* ¶ 114, including clerical and administrative work. On March 1, 2019, Onwudiwe's "tour of duty" was changed without her "knowledge or consent." *Id.* ¶ 88. Onwudiwe further asserts that, in the fall of 2012 and in January 2013, Askine asked Onwudiwe to vacate her position to "allow it to be given to an Asian woman

5

who was not as qualified." *Id.* ¶ 45. Onwudiwe asserts that similarly situated non-Black employees were not subjected to such "less desirable" tasks and treatment. *Id.* ¶ 111.

## V.     Suspension Without Pay

Onwudiwe alleges that she was suspended without pay on three occasions. Between June 25, 2019 and June 29, 2019, Onwudiwe was suspended without pay for 5 days. Between July 1, 2019 and July 5, 2019, Onwudiwe was again suspended without pay for 5 days. Between January 7, 2020 and January 21, 2020, Onwudiwe was suspended without pay for 14 days. Onwudiwe does not specifically describe the alleged grounds for these suspensions.

## VI.    Benefits

Onwudiwe also alleges that she was held to stricter standards in applying for employee benefits. In particular, she alleges that, in the spring of 2013, she was not permitted to apply for HHS's student loan repayment program, even though similarly situated non-Black employees were permitted to do so. She also asserts that on February 28, 2019, she was required to comply with different requirements for requesting leave, under which she was required to notify her supervisor in advance of submitting leave requests into the database. Onwudiwe further alleges that in January and February 2020, she was subjected to different standards for requesting FMLA leave, under which she had to provide additional information for certification and her healthcare provider was contacted and required to provide more information about her request. She alleges that similarly situated, non-Black employees were not subjected to these requirements.

## VII.   Time and Credit Hours

Similarly, Onwudiwe alleges that FDA management subjected her to heightened scrutiny of her time and attendance. She asserts that on March 1, 2019 and March 15, 2019, Dean falsely accused her of arriving late to work and failing to respond to his emails in a timely manner. She

6

also states that on March 5, 2019 and March 20, 2019, Dean attempted to "monitor and track" her attendance and falsely accused her of time and attendance fraud. *Id.* ¶¶ 90, 98. Onwudiwe also states that Dean falsely accused her of not following the agency's alternate work schedule policy. Onwudiwe further alleges that her supervisors, including Thompson and Dean, imposed on her different standards for earning credit hours. Finally, Onwudiwe asserts that Dean denied her requests for credit hours on four occasions, on March 4, 2019; March 8, 2019; March 21, 2019; and March 27, 2019.

## VIII.  Non-Promotions

Onwudiwe asserts that, beginning in August 2014, she was intentionally denied promotion opportunities.   Specifically, she states that on July 31, 2015 she was not selected for a GS-14 Consumer Safety Officer position for which she was qualified.  The selected candidates were two white men, a Middle Eastern woman, and an Asian man.  On January 28, 2019, Thompson and Dean denied Onwudiwe's request for a "promotion based upon accretion of duties," under which she would have been promoted to the GS-14 level because she was actually performing duties at that level.  *Id.* ¶ 79.  Then on May 18, 2020, Dean denied Onwudiwe's request for a temporary promotion or increase in pay to the GS-14 level which was based on her assertion that she had been directed to perform the duties of a vacant GS-14 position in addition to her own duties. Onwudiwe alleges that, while she has worked at the FDA, only 2 Black employees were promoted to management positions, as compared to between 7 and 8 white employees; no Black employees were promoted to subject matter expert positions, as compared to 10 non-Black employees; and between 3 and 4 Black employees were promoted to team lead positions, as compared to between 13 and 15 non-Black employees.

## IX.    Procedural History

On three occasions, Onwudiwe contacted an FDA Equal Employment Opportunity ("EEO") counselor to complain about discrimination.  Onwudiwe first contacted the FDA EEO counselor on September 6, 2015 and made an informal complaint of discrimination.  On December 22, 2015, Onwudiwe filed a formal complaint ("EEO Case 1") with the FDA EEO office, alleging violations of Title VII.  On September 8, 2016, the FDA EEO office issued a Report of Investigation ("ROI") informing her of her right to request a hearing with a United States Equal Employment Opportunity Commission ("EEOC") administrative judge ("AJ").  On September 29, 2016, Onwudiwe submitted a request for such a hearing.  On April 4, 2019, after extensive discovery, Administrative Judge John Alvin Henderson issued a 38-page written Decision and Order entering summary judgment in favor of the Agency on claims of race, national origin, and sex discrimination and of retaliation which had been based on many of the same allegations of conduct occurring in and before 2015, including the July 31, 2015 non-promotion to the Consumer Safety Officer position, as well as low performance ratings in 2016 and 2017.  The Decision and Order contained the following notice:

> This is a decision by an Equal Employment Opportunity Commission Administrative Judge issued pursuant to C.F.R. § 1614.109(b), 109(g) or 109(i). **With the exception detailed below, the complainant may not appeal to the Commission directly from this decision.**  EEOC regulations require the Agency to take final action on the complaint by issuing a final order notifying the complainant whether or not the Agency will fully implement this decision within forty (40) calendar days of receipt of the order entering judgment and this decision. The complainant may appeal to the Commission within thirty (30) calendar days of receipt of the Agency's final order.  The complainant may file an appeal whether the Agency decides to fully implement this decision or not.
>
> The Agency's final order shall also contain notice of the complainant's right to appeal to the Commission, the right to file a civil action in federal district court, the name of the proper defendant in any such lawsuit and the applicable time limits for such appeal or lawsuit.  If the final order does not fully implement this decision, the Agency must also simultaneously file an appeal to the Commission in

8

accordance with 29 C.F.R. 1614.403, and append a copy of the appeal to the final order. A copy of EEOC Form 573 must be attached. A copy of the final order shall also be provided by the Agency to the Administrative Judge.

If the Agency has not issued its final order within forty (40) calendar days of its receipt of the order entering judgment and this decision, the complainant may file an appeal to the Commission directly from this decision. In this event, a copy of the Administrative Judge's decision should be attached to the appeal. The complainant should furnish a copy of the appeal to the Agency at the same time it is filed with the Commission, and should certify to the Commission the date and method by which such service was made on the Agency . . .

Joint Record ("J.R.") 767, ECF No. 73-14. The FDA never issued a final order, and Onwudiwe never filed an appeal of the AJ's Decision and Order to the EEOC.

Meanwhile, on February 19, 2019, Onwudiwe contacted an FDA EEO counselor again. On June 26, 2019, Onwudiwe filed a formal complaint ("EEO Case 2") with the FDA EEO office, alleging violations of Title VII, the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621–634 (2018), the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12112–12117, and Sections 501 and 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 703, arising from incidents occurring from January 18, 2018 to June 26, 2019, including: (1) unwarranted criticism and reprimands between January 18, 2018 and June 14, 2019; (2) disparate treatment as to participation in outside activities and use of credit hours and leave between May 2018 and May 20, 2019; (3) a January 28, 2019 decision to deny Onwudiwe's request for a promotion based on accretion of duties; (4) a February 28, 2019 negative performance evaluation; (5) unrealistic performance expectations and deadlines between February 28, 2019 and June 3, 2019; (6) an April 24, 2019 decision to suspend her without pay during the time period from June 25, 2019 to June 29, 2019; and (7) undesirable assignments and tasks between June 11, 2019 and June 14, 2019. To date, Onwudiwe has not received a final agency decision with respect to this complaint.

9

Onwudiwe again contacted an FDA EEO counselor on July 30, 2020.  On September 23, 2020, Onwudiwe filed a formal complaint ("EEO Case 3"), alleging violations of Title VII, the ADEA, the ADA, and Sections 501 and 504 of the Rehabilitation Act arising from an alleged constructive discharge on August 7, 2020 based on ongoing harassment.  To date, Onwudiwe has not received a final agency decision with respect to this EEO complaint.

On June 30, 2021, Onwudiwe filed the original Complaint in this action.  In the presently operative Second Amended Complaint, Onwudiwe alleges the following causes of action in the following numbered counts:  (1) a claim of race discrimination in violation of Title VII; (2) a claim of race discrimination based on a hostile work environment, in violation of Title VII; (3) a claim of retaliation in violation of Title VII; and (4) a claim of retaliation in violation of the FMLA.

## DISCUSSION

In their Motion, Defendants seek dismissal under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, summary judgment under Rule 56, based on the following arguments:  (1) all claims arising before October 1, 2019 are time-barred; (2) all claims arising more than 45 days before Onwudiwe contacted the EEO counselor on February 19, 2019 are time barred; and (3) Onwudiwe has failed to state a claim or present sufficient evidence to support a finding of discrimination based on disparate treatment or a hostile work environment, or a finding of unlawful retaliation.

## I.    Legal Standards

To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  Legal conclusions or conclusory statements

do not suffice. *Id.* The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005).

Defendants have attached numerous exhibits to their Motion. Typically, when deciding a motion to dismiss under Rule 12(b)(6), the Court considers only the complaint and any attached documents. *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Courts are permitted to consider a document attached to a motion to dismiss "when the document is integral to and explicitly relied on in the complaint, and when the plaintiffs do not challenge [the document's] authenticity." *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606–07 (4th Cir. 2015) (quoting *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004)). A document is integral to the complaint where it is explicitly relied upon in the complaint. *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004). An integral document may also consist of a document that by its "very existence, and *not the mere information it contains,* gives rise to the legal rights asserted." *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011). However, a document is not integral to the complaint where the plaintiff's claims "do not turn on, nor are they otherwise based on, statements contained" in the document. *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016). Here, Defendants have submitted four binders of exhibits with their Motion, largely consisting of discovery materials from EEO Case 1 and investigative materials from EEO Cases 2 and 3, and boldly claim that every single exhibit is integral to the Complaint. The Court rejects this audacious claim, which plainly does not comport with the law. It will, however, consider the following documents as integral to the Second Amended Complaint

11

because they are explicitly referenced in that pleading: (1) Onwudiwe's formal EEO complaints of December 22, 2015, June 26, 2019, and September 23, 2020 and formal amendments to these complaints; and (2) Judge Henderson's Decision and Order of April 4, 2019, which included a notice of rights referenced in the Second Amended Complaint. *See* SAC ¶¶ 11, 14, 19, 20, 26.

Defendants argue that, in the alternative, the Court should convert the motion to a motion for summary judgment. Rule 12(d) requires courts to treat a Rule 12(b)(6) motion as a motion for summary judgment where matters outside the pleadings are considered and not excluded. Fed. R. Civ. P. 12(d). Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "Reasonable opportunity" has two requirements: (1) the nonmoving party must have some notice that the court is treating the Rule 12(b)(6) motion as a motion for summary judgment, and (2) the nonmoving party "must be afforded a reasonable opportunity for discovery" to obtain information essential to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985).

As to notice, Defendants title both their original Motion and the Amended Motion as a "Motion to Dismiss" and thus failed to provide sufficient notice of its intent to seek summary judgment through the Motion. As for Onwudiwe's opportunity for discovery, she had the opportunity to conduct discovery during EEO Case 1 but has not had such an opportunity in EEOC Cases 2 or 3. Where Onwudiwe has never had the opportunity to conduct discovery on the claims asserted in EEO Cases 2 and 3, and those claims are inherently fact-based, the Court will not convert the Motion to a motion for summary judgment as to those claims. Although there is a fair argument to be made that no further discovery is needed on the claims that were the subject of EEO Case 1, the Court need not decide whether it may proceed to consideration of summary

judgment on those claims because, as discussed below, they are subject to dismissal as time-barred. Accordingly, the Court will consider the Motion as a Motion to Dismiss only and will consider only the pleadings and the integral documents identified above.

## II.    Timeliness

### A.    EEO Case 1

Defendants seek dismissal of all claims arising under EEO Case 1, consisting of the claims arising in and before 2015 and the claims relating to performance evaluations in 2016 and 2017, as untimely. A Title VII plaintiff who is a federal employee must file a civil lawsuit "[w]ithin 90 days of receipt of notice of final action" by the agency, 42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.407(a), or "a]fter 180 days from the date of filing of an individual . . . complaint if agency final action has not been taken," 29 C.F.R. § 1614.407(b). If an agency does not issue a final order within 40 days of the date of receipt of an AJ's decision, then "the decision of the administrative judge shall become the final action of the agency." *Id.* § 1614.109(i). Here, Judge Henderson issued the Decision and Order entering summary judgment in favor of the agency on April 4, 2019. The FDA did not issue a final agency decision on these claims. Accordingly, Judge Henderson's order became the final agency action on May 14, 2019, 40 days after it was issued, *id.* § 1614.109(i), and Onwudiwe was required to file suit by August 12, 2019, 90 days after the date of final agency action, 42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.407(a); *see Patel v. McDonough*, No. MJA-21-0131, 2022 WL 163625, at *4 (N.D. W.Va. Jan. 18, 2022) (finding that a plaintiff's complaint was not timely where he failed to file the complaint within 90 days of the date that the administrative law judge's opinion became the final agency action). However, Onwudiwe did not file the original Complaint in this case until June 30, 2021, nearly two years after the deadline. Accordingly, Onwudiwe's claims based on the incidents underlying EEO Case 1 are untimely.

Nevertheless, Onwudiwe requests that the Court equitably toll the limitations period. The statutory time limits applicable to Title VII claims against the federal government are subject to equitable tolling. *Irwin v. Dep't of Veteran Affs.*, 498 U.S. 89, 95–96 (1990); *Nealon v. Stone*, 958 F.2d 584, 589 (4th Cir. 1992). To be entitled to equitable tolling, however, a plaintiff must have acted with "reasonable diligence." *Holland v. Florida*, 560 U.S. 631, 653 (2010). Here, Onwudiwe argues that the Court should equitably toll the limitations period because she received inadequate notice that the AJ's order would become the final agency action if the FDA did not issue a final decision within 40 days. Notably, the Notice contained at the end of the AJ's decision did not specifically reference this rule. However, Onwudiwe was represented by counsel during the proceedings before the AJ and at the time of the AJ's decision. Moreover, even if the Notice in the AJ's decision did not state that a final agency action would be deemed to have occurred 40 days after the AJ's decision, the Notice specifically instructed Onwudiwe that if the agency did not issue a final agency action within 40 days, she would have the right to "file an appeal to the Commission directly from this decision." J.R. 767. Onwudiwe did not file such an appeal. She then waited more than two years after the AJ issued his order before she filed suit in June 2021. Where Onwudiwe was represented by counsel, did not exercise her right to appeal, and filed her complaint nearly two years after the deadline, the Court does not find that she acted with "reasonable diligence." *Holland*, 560 U.S. at 653. Accordingly, under these facts, the Court will not grant equitable tolling to extend the limitations period by two years. *See, e.g., Gatling v. Carter*, No. PX-15-3723, 2017 WL 480756, at *6 (D. Md. Feb. 6, 2017) (finding that the fact that the plaintiff misread the administrative judge's order regarding the applicable deadline did not warrant equitable tolling); *Jones v. Spencer*, No. LWF-17-0145, 2018 WL 3945384, at *5 (E.D.N.C. Aug. 16, 2018) (finding that a plaintiff was not entitled to equitable tolling even though

the administrative judge's order did not specifically inform the plaintiff of the filing deadlines for an appeal and for a civil action).  The Motion to Dismiss will therefore be granted as to all claims underlying EEO Case 1, consisting of all claims based on conduct before Onwudiwe filed EEO Case 1 on December 22, 2015, as well as those based on the allegedly negative performance evaluations in 2016 and 2017 that were addressed that case.  *See Gatling*, 2017 WL 480756, at *5 (finding that, because the plaintiff failed to adhere to the 90-day filing deadline, dismissal of her claims was warranted under 29 C.F.R. § 1614.407(a)); *cf. Teal v. Singleton*, 131 F. App'x 431, 432 (4th Cir. 2005) (finding that the district court properly dismissed a Title VII plaintiff's claims against a private employer where she failed to file suit within 90 days of the date that she received the right-to-sue letter from the EEOC).

### B.    EEO Case 2

Defendants also seek dismissal of all claims arising more than 45 days before Onwudiwe contacted the EEO counselor on February 19, 2019 in advance of the filing of the EEO complaint in EEO Case 2.  A federal employee must consult with an EEO counselor within 45 days of any alleged discrimination, harassment, or retaliation. 29 C.F.R. § 1614.105(a)(1).  A plaintiff's failure to contact an EEO counselor within this time period requires dismissal of claims arising before that 45-day period, absent specific circumstances warranting waiver.  *See Landino v. Sapp*, 520 F. App'x 195, 198 (4th Cir. 2013).  Thus, under this rule, claims based on conduct occurring before this 45-day period, which runs from January 5, 2019 and February 19, 2019, are subject to dismissal.

This time limit may be waived under the following circumstances:  (1) when the plaintiff demonstrates a lack of notification of the time limit and that the plaintiff was not otherwise aware of it;  (2) when the plaintiff did not know and reasonably should not have known that the

discriminatory matter or personnel action occurred; (3) when despite due diligence the plaintiff was prevented by circumstances beyond the plaintiff's control from contacting the counselor within the time limit; or (4) for other reasons considered sufficient by the agency or the EEOC. *Jakubiak v. Perry*, 101 F.3d 23, 27 (4th Cir. 1996); 29 C.F.R. § 1614.105(a)(2).

In arguing that her claims should be deemed timely, Onwudiwe asserts only that all of her "continuing and ongoing hostile environment allegations originating in [EEO] Case 2 are timely" pursuant to the continuing violation doctrine. Opp'n at 12–13, ECF No. 61-1. Under the continuing violation doctrine, a Title VII hostile work environment claim "may appropriately extend" to include "acts that occurred before the relevant limitations period" if "the hostile work environment continued within the limitations period as well." *Gilliam v. S.C. Dep't of Juv. Justice*, 474 F.3d 134, 140 (4th Cir. 2007) (quoting *White v. BFI Waste Servs., LLC*, 375 F.3d 288, 292 (4th Cir. 2004)). The earlier acts may be considered if they are part of a "series of separate but related acts amounting to a continuing violation." *Beall v. Abbott Labs.*, 130 F.3d 614, 620 (4th Cir. 1997) (quoting *Jenkins v. Home Ins. Co.*, 635 F.2d 310, 312 (4th Cir. 1980)). Thus, to apply the continuing violation doctrine and allow for a hostile work environment claim to proceed, the Court must find that at least one act contributing to a hostile work environment occurred during the 45-day time period, between January 5, 2019 and February 19, 2019. *See Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 442 (4th Cir. 1998) ("It is *only* when an actual violation has occurred within the requisite time period . . . that under any possible circumstances the theory of continuing violation is sustainable.").

Here, Onwudiwe alleges that between January 5, 2019 and February 19, 2019, the following incidents occurred: (1) on January 28, 2019, she was not selected for a promotion based on accretion of duties; (2) on February 5, 2019, she was subjected to different standards regarding

approval of participation in outside activities and was "threatened" by an FDA employee, Patricia Reilly, about her participation in outside activities, SAC ¶ 76; and (3) beginning in January 2019, Dean and Thompson "repeatedly changed the order" of pending assignments and "presented [her] with conflicting information," *id.* ¶ 74.

Where Onwudiwe alleges one incident during the 45-day period during which she was threatened by an FDA official, she has arguably alleged an incident within the limitations period that could be part of a longer hostile work environment that began earlier. *See EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 318 (4th Cir. 2008) (finding that constant and repetitive verbal abuse can constitute a hostile work environment). The Court will therefore decline to dismiss as time-barred Onwudiwe's hostile work environment claim based on incidents arising after December 22, 2015, the filing of EEO Case 1. However, to the extent that Onwudiwe seeks to pursue any race discrimination claims based on disparate treatment or retaliation claims based on incidents occurring more than 45 days before Onwudiwe contacted the EEO counselor on February 19, 2019 about EEO Case 2, those claims will be dismissed as the time-barred because the continuing violation doctrine applies only to hostile work environment claims. *See Perkins v. Int'l Paper Co.*, 936 F.3d 196, 209 n.5 (4th Cir. 2019).

Thus, all claims of disparate treatment and retaliation that are based on conduct that occurred before January 5, 2019 are time-barred and will be dismissed. *See Zografov v. V.A. Med. Ctr.*, 779 F.2d 967, 968, 970 (4th Cir. 1985) (finding that the district court properly dismissed a plaintiff's complaint where the plaintiff failed to timely contact an EEO counselor about the alleged discrimination); *Landino*, 520 F. App'x at 198 (dismissing claims based on incidents that occurred more than 45 days before the plaintiff contacted an EEO counselor); *Blount v. Dep't of Health & Hum. Servs.*, 400 F. Supp. 2d 838, 841–42 (D. Md. 2004) (finding that a plaintiff's failure

17

to contact an EEO counselor until 84 days after the alleged discriminatory conduct, and thus outside the 45-day time period, warranted dismissal of the claims).

## III.   Race Discrimination

Defendants seek dismissal of Onwudiwe's discrimination claims in Counts 1 and 2. Although the race discrimination claim in Count 1 references harassment, which makes it somewhat duplicative of Count 2 alleging discrimination based on a hostile work environment, the Court will construe Count 1 liberally to allege claims of race discrimination based on disparate treatment.   Because any such claims based on conduct arising before January 5, 2019 are time-barred, the remaining claims include the following:  (1) imposition of differing standards for participation in outside activities in July 2019; (2) deprivation of training and professional development opportunities in April 2019, June 2019, and July 2019; (3) verbal and written criticism of her performance from March 2019 through June 2019 and in November 2019 and December 2019; (4) negative performance evaluations in July 2019 and March 2020; (5) suspensions without pay in June 2019 and July 2019; (6) subjection to higher standards as to leave, time, attendance, and utilization of credit hours in February 2019 and March 2019; and (7) the failure to grant requests for promotions on January 28, 2019 and May 18, 2020.

A race discrimination claim may be established through one of two methods.  The plaintiff may either demonstrate through direct or circumstantial evidence that discrimination motivated an adverse employment action, or the plaintiff may proceed through the approach espoused in *McDonnell Douglas v. Green*, 411 U.S. 792, 802–04 (1973), under which the plaintiff must establish a *prima facie* case of discrimination; upon such a showing, the defendant must provide evidence of a legitimate, nondiscriminatory reason for the action; and if such evidence is presented, the plaintiff must demonstrate that the articulated reason was actually a pretext for discrimination.

*Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 318 (4th Cir. 2005). To establish a *prima facie* case of race discrimination based on disparate treatment, a plaintiff must allege facts demonstrating: (1) the plaintiff's membership in a protected class; (2) the plaintiff's satisfactory job performance; (3) that the plaintiff was subjected to an adverse employment action; and (4) that similarly situated employees outside the protected class received more favorable treatment or that other circumstances support an inference of discrimination. *White v. BFI Waste Servs., LLC*, 375 F.3d 288, 295 (4th Cir. 2004); *Carter v. Ball*, 33 F.3d 450, 458 (4th Cir. 1994). The parties do not dispute that Onwudiwe, who is Black, is a member of a protected class. *See, e.g.*, *Cook v. CSX Transp. Corp.*, 988 F.2d 507, 511 (4th Cir. 1993). Although the parties dispute whether Onwudiwe's performance was satisfactory, the Court need not resolve that question because it can resolve the Motion as to these claims based on the remaining two elements.

### A.     Adverse Employment Action

An adverse employment action for purposes of a discrimination claim is one which adversely affects the "terms, conditions, or benefits" of employment. *James v. Booz–Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004). Such adverse actions could take the form of "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion." *Boone v. Goldin*, 178 F.3d 253, 255 (4th Cir. 1999). Here, the vast majority of the conduct underlying Onwudiwe's claims—including imposing on her different guidelines for participating in outside activities, depriving her of training and professional development opportunities, assigning her clerical and administrative work and a heavy workload, subjecting her to higher scrutiny of her time and attendance, and subjecting her to verbal and written criticism—did not affect the "terms, conditions, or benefits" of employment and thus did not constitute adverse employment actions. *James*, 368 F.3d at 375–77 (finding that reassignment

19

to a new role with less desirable assignments was not an adverse employment action absent facts demonstrating a tangible effect on the terms or conditions of employment such as opportunities for promotion); *Fierce v. Burwell*, 101 F. Supp. 3d 543, 552 (D. Md. 2015) (finding that the plaintiff was not subjected to an adverse employment action when she was excluded from training sessions and received criticism in a written memorandum of counseling because such actions did not affect the terms and conditions of her employment); *Kearse v. Berryhill*, No. RDB-17-3028, 2018 WL 6589846, at *7 (D. Md. 2018) (finding that requirements imposed on a federal employee's use of credit hours, requiring that he submit requests in advance in writing and submit a report stating what tasks had been completed, did not constitute an adverse employment action); *Benton v. Burns*, No. PJM-15-2126, 2017 WL 491251, at *7 (D. Md. Feb. 7, 2017) (finding that increased monitoring of time and attendance did not constitute an adverse employment action). Where Onwudiwe has not alleged facts demonstrating how her negative performance evaluation scores impacted the terms and conditions of employment, such as opportunities for promotion, such evaluations also do not constitute adverse employment actions. *See James*, 368 F.3d at 375–77 (finding that lower performance evaluations were not adverse employment actions absent facts demonstrating that they had a tangible effect on the terms or conditions of employment, such as by curtailing opportunities for promotion).

Thus, the only conduct that constitutes an adverse employment action that is not time-barred consists of (1) the suspensions without pay during the time periods from June 25, 2019 to June 29, 2019 and July 1, 2019 to July 5, 2019 ; and (2) the failure to grant requests for promotions on January 28, 2019 and May 18, 2020.

20

**B.      Inference of Discrimination**

As to the allegations of suspensions and non-promotions that could qualify as adverse employment actions within the limitations period, they do not support plausible claims of disparate treatment because the allegations do not identify circumstances giving rise to an inference of race discrimination.  Onwudiwe has not provided facts showing that other, similarly situated employees outside of the protected class were not subjected to a suspension under similar circumstances.  The only non-promotion decisions during the limitations period were denials of requests for an increase in pay grade based her claim that she was performing duties consistent with a higher grade, not decisions in which she was not selected for a higher level position for which a non-Black person was selected, and she has not alleged sufficient facts to show that similarly situated employees from outside the protected class received the type of promotion she sought under similar circumstances.  The only identified incident which suggests any racial animus is the inclusion in October 2014 meeting minutes of a description of Onwudiwe as "visually angry," "increasingly angrier," "raising her voice," "eye rolling," "head shaking," "smirking," "sighing," and "creat[ing] a tense and uncomfortable meeting environment," statements which arguably reflect negative stereotypes about Black women.  SAC ¶ 43.  However, where this incident occurred nearly 10 years ago, in October 2014, and the individuals who drafted the meeting minutes, Ellipta and Cunningham, are not alleged to have been involved in the suspension or non-promotion decisions during the limitations period or any other incidents underlying Onwudiwe's claims, the Court finds that Onwudiwe has not alleged sufficient facts to give rise to an inference of unlawful discrimination arising from the suspension and non-promotion decisions.  *White*, 375 F.3d at 295.

The Court will therefore grant the Motion as to the race discrimination claim in Count 1.

## IV.     Hostile Work Environment

Defendants also seek dismissal of Onwudiwe's claim of a hostile work environment claim based on race. A hostile work environment exists "when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive work environment." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015). To prove such a claim, a plaintiff must show that (1) the plaintiff experienced unwelcome conduct; (2) the conduct was based on the plaintiff's race, color, national origin, religion, age, or sex; (3) the conduct was sufficiently severe or pervasive to alter the conditions of employment and to create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer. *Baqir v. Principi*, 434 F.3d 733, 745–46 (4th Cir. 2006).

Onwudiwe alleges that the following unwelcome conduct occurring between December 22, 2015 and August 7, 2020 contributed to a hostile work environment: (1) Dean routinely subjected her to threatening, intimidating, and verbally abusive behavior; (2) she received negative performance evaluations and was subjected to criticism of her work; (3) she was not selected for a promotion; (4) she was reprimanded and subjected to unfair discipline; (5) she was held to different expectations regarding participation in outside activities; (6) she was subjected to different expectations regarding applications for credit hours; and (7) her work duties and responsibilities were altered so that she was required to perform less desirable tasks.

### A.     Severe or Pervasive

Although Onwudiwe has alleged that she was subjected to unwelcome conduct, the allegations do not support a finding that the conduct, as a whole, was "sufficiently severe or pervasive to alter the conditions of [her] employment and to create an abusive atmosphere." *Baqir*,

22

434 F.3d at 745–46.  To be sufficiently severe or pervasive, the conduct must have altered the conditions of employment and created an abusive or hostile atmosphere.  *EEOC v. Cent. Wholesalers, Inc.*, 573 F.3d 167, 175 (4th Cir. 2009).  This element has both subjective and objective components.  *Id.*  As to the subjective component, the plaintiff must have subjectively perceived the environment to be hostile or abusive.  *Id.*  Here, Onwudiwe reached out to an EEO counselor regarding the conduct.  Thus, Onwudiwe has satisfied the subjective element.  *See id.* at 176 (finding that a plaintiff's emotional distress and complaints to supervisors met the subjective component).  In assessing whether the environment "was objectively severe or pervasive," courts "must look at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Id.* (quoting *Sunbelt Rentals, Inc.*, 521 F.3d at 315); *see also Mosby-Grant v. City of Hagerstown*, 630 F.3d 326, 335 (4th Cir. 2010).   No "single factor is dispositive" because the "real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships."  *Cent. Wholesalers, Inc.*, 573 F.3d at 176 (internal citations omitted).

Here, the vast majority of the allegations of unwelcome conduct relate to personnel decisions or actions that she deemed unfair.  While Onwudiwe clearly disagrees with the negative performance evaluations, criticism of her work, undesirable work assignments, discipline imposed, and heightened scrutiny relating to credit hours and participation in outside activities, those actions do not constitute the kind of "discriminatory intimidation, ridicule, and insult," *Boyer-Liberto*, 786 F.3d at 277, or "physically threatening or humiliating" conduct, *Cent. Wholesalers, Inc.*, 573 F.3d at 176, that typically underlies a hostile work environment claim.  *See, e.g., Hill v. Hagel*, 561 F. App'x 264, 265–66 (4th Cir. 2014) (finding that the plaintiff's allegations of unfair

evaluations, placement on a performance improvement plan, removal of supervisory duties, suspensions, leave restrictions, and revocation of a security clearance did not support hostile work environment claim under Title VII); *Graham v. Prince George's Cnty.*, 191 F. App'x 202, 204–05 (4th Cir. 2006) (affirming the district court's determination that a supervisor's harsh reprimands about an employee's performance were not sufficiently severe or pervasive to create a hostile work environment); *Roberts v. Off. of the Sheriff for Charles Cnty.*, No. DKC-10-3359, 2012 WL 12762, at \*7 (D. Md. Jan. 3, 2012) (finding that the imposition of disparate disciplinary sanctions and denial of training did not create a hostile work environment).

Although Onwudiwe refers to "threatening, intimidating and verbally abusive behavior" by Dean, in those incidents, Dean yelled at her in an angry tone on one occasion in April 2019; allegedly sent her a "harassing and fear-inducing email" regarding her eligibility for FMLA leave in June 2019; stated that her performance was poor and requested an impromptu, in person meeting to discuss her performance in June 2019; required Onwudiwe to meet with him one-on-one in July 2019 despite her concerns for her "safety concerns," SAC ¶ 142; and instructed her to "provide him [with] a list of her accomplishments" in advance of her mid-year performance evaluation in July 2019, *id.* ¶ 146. Such conduct does not rise to the level of severe or pervasive harassment that alters the conditions of employment and creates an abusive atmosphere. *See, e.g.*, *Holloway v. Maryland*, 32 F.4th 293, 301 (4th Cir. 2022) (holding that allegations that a supervisor criticized the plaintiff's leadership and budget management in meetings, scheduled a meeting to start before the plaintiff was scheduled to arrive and then yelled and slammed documents onto a desk during the meeting, required him to sign a disciplinary evaluation, required him to address the supervisor as "sir," failed to honor him at an employee recognition event, and surveyed other employees about the plaintiff's whereabouts during the work day were insufficient "to establish an abusive

24

environment"); *Buchhagen v. ICF Int'l, Inc.*, 545 F. App'x 217, 219 (4th Cir. 2013) (finding that allegations of the supervisor mockingly yelling at the plaintiff in a meeting, "yelling and pounding her hands on her desk during another meeting," "repeatedly harp[ing] on a mistake" by the plaintiff, "making snide comments" to the plaintiff, "playing favorites with employees and pitting employees against each other," and "unfairly scrutinizing and criticizing" the plaintiff's use of leave and lack of compliance with directives fall "far short of being severe or pervasive enough to establish an abusive environment"); *Sunbelt Rentals, Inc.*, 521 F.3d at 315–16 (finding that complaints premised on rude treatment, callous behavior, or a routine difference of opinion and personality conflict are not actionable under Title VII); *Linton v. Johns Hopkins Univ. Applied Physicians Lab'y, LLC*, No. JKB-10-0276, 2011 WL 4549177, at *12 (D. Md. Sept. 28, 2011) (finding that a plaintiff's allegations of "repeated rudeness," "physical acts such as smacking a table and lunging at her, and "verbal threats" were insufficiently severe or pervasive to create a hostile work environment).  In turn, the allegations necessarily do not support a claim of constructive discharge based on the alleged harassment. *See Evans v. Int'l Paper Co.*, 936 F.3d 183, 193 (4th Cir. 2019) (stating that for a constructive discharge claim based on a hostile work environment, "the plaintiff must show 'something more' than the showing required for a hostile work environment claim") (quoting *Penn. State Police v. Suders*, 542 U.S. 129, 147 (2004)). Accordingly, the Motion to Dismiss will be granted as to the hostile work environment claim.

### B.      Based on Race

Finally, even if Onwudiwe established severe or pervasive conduct sufficient to support a hostile work environment claim, she has not alleged sufficient facts to show that the alleged harassment was based on race.  As discussed above, the only reference to any evidence that could arguably show racial animus relates to an incident from 2014 in which disparaging comments

25

about Onwudiwe were included in meeting minutes. *See supra* part III.B. Where those comments were not made directly to Onwudiwe, and the employees who wrote them were not her supervisors and are not alleged to have engaged in any of the unwelcome conduct from 2015 to the present underlying the hostile work environment claim, the Court finds that the hostile work environment claim also fails based on insufficient allegations to meet this element.

The Court will therefore grant the Motion as to the hostile work environment claim in Count 2.

**V.     Retaliation**

Defendants also seek dismissal of Onwudiwe's retaliation claims under Title VII and the FMLA as alleged in Counts 3 and 4. Title VII bars employers from taking a materially adverse action against an employee in retaliation for opposing an unlawful employment practice covered under the statute, such as for making a complaint of race discrimination. *See* 42 U.S.C. § 2000e-3(a). Similarly, the FMLA bars employees from discharging or otherwise discriminating against any individual "for opposing any practice made unlawful" by the FMLA or considering the use of FMLA leave as a negative factor in employment actions. 29 U.S.C. § 2615(a)(2); 29 C.F.R. § 825.220(c). To prove a claim of unlawful retaliation under both Title VII and the FMLA, a plaintiff must demonstrate that (1) the plaintiff engaged in "protected activity," such as a complaint of discrimination; (2) the employer took a materially adverse action against the plaintiff; and (3) there was a "causal connection between the protected activity and the adverse action." *Ray v. Int'l Paper Co.*, 909 F.3d 661, 669 (4th Cir. 2018); *Adams v. Anne Arundel Cnty. Pub. Schs.*, 789 F.3d 422, 429 (4th Cir. 2015). If these elements of a *prima facie* case are established, the employer must produce evidence of a legitimate, non-retaliatory reason for the materially adverse action. *Laber v. Harvey*, 438 F.3d 404, 431 (4th Cir. 2006) (applying the *McDonnell*

*Douglas* framework to a retaliation claim). If this requirement is met, the plaintiff must then show that the employer's reason was pretextual in that it was false and that retaliation was the real reason for the action. *Id.*

The first element of a *prima facie* case of retaliation is protected activity. As relevant here, an employer may not retaliate against an employee for opposing discriminatory practices in the workplace that would violate Title VII or the FMLA. *See Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998). Protected activity includes engaging in an informal grievance process, such as reporting discriminatory conduct to an EEO counselor. *Id.* Thus, where Onwudiwe contacted an EEO counselor on February 19, 2019 and July 30, 2020, she engaged in protected activity for purposes of her Title VII claim. *See id.*; *Mackey v. Shalala*, 43 F. Supp. 2d 559, 569 (D. Md. 1999) (finding that contacting an EEO counselor constitutes protected activity). Moreover, where Onwudiwe took FMLA leave between January 23, 2020 and April 23, 2020, she engaged in protected activity within the meaning of the FMLA. *Yashenko v. Harrah's N.C. Casino Co., LLC*, 446 F.3d 541, 551 (4th Cir. 2006) (finding that taking FMLA leave constitutes protected activity for purposes of an FMLA retaliation claim).

On the second element, a "materially adverse" action is one which "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). An action taken against a plaintiff may be "materially adverse" even if it did not result in a loss of compensation, job title, level of responsibility, or opportunity for promotion. *Id.* at 67 (rejecting the standard limiting actionable retaliation to "so-called ultimate employment decisions"). Here, as to conduct within the limitations period, Onwudiwe has alleged that she was subjected to retaliation when she was suspended without pay on two occasions, between June 25, 2019 and June 29, 2019 and between

27

July 1, 2019 and July 5, 2019.  Notably, in *Burlington Northern*, the Court held that a suspension without pay, even one for which pay was later reinstated, could constitute a "materially adverse" action supporting a Title VII retaliation claim.  *Id.* at 72–73.  Likewise, by alleging that she was denied a temporary promotion on May 18, 2020, Onwudiwe has alleged another materially adverse action.  *Bosse v. Balt. Cnty.*, 692 F. Supp. 2d 574, 590 (D. Md. 2010) (considering an employer's failure to promote the plaintiff to be a materially adverse action for purposes of an FMLA retaliation claim).

Finally, as to the third element, on a motion to dismiss, causation in a retaliation claim can be inferred based on the temporal proximity between the protected activity and the materially adverse action.  *See King v. Rumsfeld*, 328 F.3d 145, 151 & n.5 (4th Cir. 2003) (concluding that ten weeks between the protected activity and the materially adverse action gave "rise to a sufficient inference of causation to satisfy the prima facie requirement").  Here, as to the Title VII claim, Onwudiwe first contacted the EEO counselor on February 19, 2019 and attended an alternative dispute resolution of her EEO complaint on April 24, 2019.  Onwudiwe has alleged that after she declined to settle her complaint during that session, Dean proposed to suspend Onwudiwe that same day based on "false allegations."  SAC ¶ 83.  Onwudiwe's five-day suspension went into effect approximately ten weeks later, on June 24, 2019.  Onwudiwe further asserts that on July 6, 2019, she received a second five-day suspension that covered the period from July 1, 2019 to July 5, 2019, even though she had already worked those days.  Where the suspensions occurred approximately four months after Onwudiwe's contact of an EEO counselor in February 2019 and within weeks after Onwudiwe engaged in an unsuccessful alternative dispute resolution session on her EEO claim, the Court finds sufficient temporal proximity to support an inference of causation as to her Title VII retaliation claim.  *King*, 328 F.3d at 151 & n.5.

28

As for Onwudiwe's FMLA claim, Onwudiwe took FMLA leave from January 30, 2020 until April 23, 2020. Less than one month after returning from leave, on May 18, 2020, Onwudiwe was denied a temporary promotion to increase her pay to the GS-14 level where she was performing duties commensurate with that level. Again, the temporal proximity is sufficient to support an inference of causation at the motion-to-dismiss stage. *See id.*

HHS argues that there are legitimate non-retaliatory reasons for the suspensions, such as that the June 2019 suspension was the culmination of a disciplinary process that began in March 2019 and that the July 2019 suspension was an erroneous withholding of pay that was later reversed. These explanations, however, rely on facts outside the pleadings which cannot be considered on a motion to dismiss. Fed. R. Civ. P. 12(d). As to the May 2020 promotion decision following Onwudiwe's use of FMLA leave, Defendants assert that there was no actual position open to which Onwudiwe could be promoted and that Onwudiwe had merely requested a higher pay grade to account for the fact that she assumed the duties of another employee on a temporary basis. Although this explanation is consistent with the allegations in the Second Amended Complaint, it does not preclude an inference that the denial of the temporary promotion was retaliatory. Accordingly, the Court finds that at the present stage of the case, Onwudiwe has sufficiently pleaded Title VII and FMLA retaliation claims. The Motion to Dismiss will therefore be denied as to the claims in Counts 3 and 4.

## CONCLUSION

For the foregoing reasons, the Motion to Dismiss will be GRANTED IN PART and DENIED IN PART. The Motion will be granted as to the race discrimination and hostile work environment claims in Counts 1 and 2 and all claims based on conduct occurring before January 5, 2019. The Motion will be denied as to the retaliation claims in Counts 3 and 4 based on alleged acts of retaliation occurring after January 5, 2019. A separate Order shall issue.

Date:  August 18, 2023

THEODORE D. CHUANG
United States District Judge